## JONES v. S. H. KRESS & CO.

No. 5684.   Opinion Filed November 2, 1915.

Rehearing Denied December 21, 1915.

(153 Pac. 653.)

1.   **APPEAL AND ERROR—Discretionary Ruling—Amendment to Pleadings.** The granting or refusing permission by the trial court to amend pleadings after the trial has commenced rests within the sound judicial discretion of the trial court, and his action thereon will not be reviewed here unless it is shown that he has abused that discretion.

2. **LANDLORD AND TENANT—Repairs—Duty of Landlord.** In the absence of an expressed stipulation to that effect, the lessor of a building for business purposes is under no legal or implied obligation to keep the leased premises in repairs and tenantable.

3. **ESTOPPEL—Pleading—Sufficiency.** A party entitled to an estoppel need not in all cases formally plead the estoppel. If the facts constituting the estoppel are in any way sufficiently pleaded, he is entitled to the benefit of the law arising therefrom.

4. **TRIAL—Instructions—Amount of Recovery—Evidence.** It is not error for the court to instruct the jury what the amount of recovery should be in case they find for the plaintiff when there is no controversy over the amount due, provided they first find the controverted issues in favor of plaintiff.

5. **NEW TRIAL — Newly Discovered Evidence — Discretion.** The granting of a new trial on the grounds of newly discovered evidence is largely within the discretion of the trial judge.

(Syllabus by Mathews, C.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Action by S. H. Kress & Co., a corporation, against James M. Jones. Judgment for plaintiff, and defendant brings error. Affirmed.

*James S. Twyford,* for plaintiff in error.

*Everest & Campbell,* for defendant in error.

Opinion by MATHEWS, C. On the 30th day of April, 1908, U. S. Stone and wife and Mary L. Powell and her husband entered into a lease contract with T. J. Hendrickson and wife for a lease of 99 years upon lots 21 and 22 in block 34, in Oklahoma City, and the building thereon, known as the Hendrickson building. The two lessors having had a disagreement, Powell and husband entered suit against Stone and wife for an adjustment of their affairs relative to said lease. On December 14, 1908, said parties filed in said action a stipulation that a receiver be appointed by the court, who should

sell the said leasehold on December 21, 1908, at 1:30 p. m., to the highest bidders for cash, and a receiver was so appointed in compliance with said stipulation, and the leasehold sold by him in accordance with stipulations. and the same purchased by the said U. S. Stone, and on the 13th day of April, 1909, the sale was by the court confirmed and deed executed by the receiver to the said U. S. Stone. On December 18, 1908, U. S. Stone and wife made and executed to defendant, James M. Jones, a written lease for five years from January 1, 1909, upon a certain room in said building to be used by said Jones in conducting a pool and billiard hall, the agreed rental being $200 per month. On the 21st day of December, 1908, the said U. S. Stone and wife made a written assignment of their interest in said leasehold to the Oklahoma City National Bank, which instrument was recorded on the same date at 3:15 o'clock p. m. On the 16th day of December, 1909, the said U. S. Stone and wife and the aforesaid bank assigned said leasehold to one Watkins, "subject to all outstanding valid subleases to occupants of said premises." On the 22d day of December, 1911, the said Watkins assigned said leasehold to the plaintiffs, S. H. Kress & Co., subject to the outstanding sublease to James M. Jones. The said defendant, James M. Jones, entered into possession of said room leased to him and occupied the same as a pool hall, paying the monthly rental of $200, until the 30th day of January, 1912, when he vacated the same and this suit was instituted by plaintiff for the rental for the balance of the term in the sum of $4,600.

In the action filed by plaintiff against defendant, the plaintiff declared upon the said lease entered into between defendant and U. S. Stone on the 18th day of De-

cember, 1908, and sued for a breach of the same. **To**
this petition Jones answered in substance:     (1) A gen-
eral and specific denial of the petition.     (2) Denial that
the lease ever became effective, and alleging that if it did
the premises became untenantable, requiring him to va-
cate same.     (3) Plaintiff and its predecessors failed to
keep the radiators in said building in proper repair, and
did not furnish sufficient heat to properly warm the
premises for pool hall purposes, and permitted the roof
of said building to be and become in a bad state of re-
pair, whereby rain entered the premises to defendant's
damage, all of which was well known to the plaintiff and
its predecessors, and which they failed to remedy.     (4)
That defendant's access to the premises was interfered
with by the plaintiff and his predecessors in the construc-
tion of barriers, and the signs of defendant's business
were obstructed thereby, also a defective plumbing con-
nection upstairs in a separate department from that of
defendant caused damage to defendant's property, and
also damaged his business.     (5) That the title to said
premises was involved in litigation in an action pending
in the district court of Oklahoma county entitled "No.
8035, Powell *et al.* v. Stone *et al.*," and that at the time
of the execution of said lease the said Stone was not in
possession of the premises, but the same were in the pos-
session of a person appointed by the court in said case.
(6) That at the time said lease was executed the said
Stones were not the owners of said property, and were not
entitled, therefore, to make a valid lease thereon; that
when defendant learned of this fact and advised the said
Stone thereof, it was then agreed between the said Stone
and Jones that in the event said Stone became the pur-
chaser of the title to the property at the judicial sale on

December 21, 1908, they would execute a new lease. On said date defendant, believing said Stone had purchased said property, offered to make said lease, and was then advised that the said Stone had not purchased the same, but a certain bank in Oklahoma City had become such purchaser, and thereupon it was agreed by and between said Stone and Jones that said written lease made theretofore between said parties would not be considered binding, and that this defendant would remain in possession of said premises at an agreed rental of $200 per month, and not under said lease, and until other arrangements were made. At the same time, the defendant also filed his cross-petition, wherein he alleged that on the 14th day of December, 1908, he entered into a lease contract with one U. S. Stone and wife for the use of the second floor of the Hendrickson building for a period of five years from January 1, 1909; that the lessors agreed therein to keep the same in good repair and in a tenantable condition; that they agreed to give defendant free access to said second floor, but in violation thereof built a wall in front of the staircase which hid defendant's signs; that defendant had been greatly damaged by reason of the said lessors not keeping the premises in a tenantable condition, in the sum of $15,015.85, for which he prayed judgment.

The court sustained a demurrer to said cross-petition. The cause came on for trial, and the plaintiff having rested its case, the defendant offered testimony concerning an alleged agreement to rescind the written lease and substitute therefor an oral or verbal lease to the effect that the terms should be from month to month. Upon objection, the court excluded the testimony, where-

upon the defendant asked permission to file an amend-
ment to the effect that before the assignment of the lease
to plaintiff, defendant and the lessor, U. S. Stone,
entered into an executed oral agreement for a valuable
consideration, whereby the said lease sued on was re-
scinded, and that by express agreement between the par-
ties the defendant became a tenant from month to month.
Upon the offering of this amendment the court, in the
absence of the jury, heard the evidence offered by de-
fendant in support of the same, which, in substance, was
that on the 23d day of December, 1908, U. S. Stone in-
formed defendant that the written lease they had entered
into was void as the Oklahoma City National Bank had
bought one-half interest in the original lease, and that
the lease he had could not go into effect, but that he
might use the building until further notice; that Stone
told him he would make the repairs, and did afterwards
make repairs on the building; and that he also told him
he could not give him a new lease without the bank first
seeing it; that he spoke to the said Stone afterwards
about having the premises repaired and that he, the said
Stone, did some repairing thereon; that Stone told him
the rental contract was null and void and that they
agreed to that and Stone fixed up the building and put it
in proper repair for him.

After hearing this evidence the court refused to
allow the amendment, and this action of the court is the
first question presented in defendant's brief. We are not
prepared to say that it was error for the court to refuse
his permission to the filing of this amendment, even
though defendant had already imperfectly pleaded the
same thing in his original answer. The granting or re-
fusing permission by the trial court to amend pleadings

after the trial has commenced rests within the sound judicial discretion of the trial court, and his action thereon will not be reviewed here unless it is shown that he has abused that discretion. The trial court had this kind of a proposition before him: The defendant, to the plaintiff, was in possession of the premises in controversy apparently under a five-year written lease. He had already occupied the same for three years and one month when he vacated. While it is true that, under our Code, antagonistic defenses may be set up in the same answer, yet such defenses do not appeal very strongly to any one. We find the defendant first practically admitting that he held the premises under a five-year lease as claimed by plaintiff, and alleging that the reason he vacated the premises was that the plaintiff permitted the same to become dilapidated, untenantable, and unsanitary, and that he was thereby compelled to vacate the same to his great loss and damage. This he follows with his cross-action, wherein he declares upon the very lease for the breach of which plaintiff instituted its action and there he expressly states that he entered into the said lease contracts in controversy with the said Stone for a term of five years, and then avers that by reason of the failure of the lessor to keep said premises in good repair and in a tenantable condition he was damaged in the specific sum of $15,015.85, which he alleges is the difference between the earnings of his business for the first 18 months he occupied the premises and the last 18 months he occupied the same. With these two allegations before the court, the defendant next asked the court to be allowed to allege and prove that, during all the time he had occupied the premises in controversy, for a period of three years and one month, ostensibly under a five-year

written lease, he had been a tenant from month to month only, the said lease having been abrogated from the beginning. A party appearing before the court with such contradictory and antagonistic statements is not in a very favorable attitude to invoke the court's judicial discretion, and the feeling of the court in such cases would naturally be to rule him to the letter of the law. It is plainly apparent that defendant intended to rely upon the failure of the plaintiff to keep the premises in repair as his actual defense, and when the court excluded that defense, correctly, for the reason that, in the absence of an expressed stipulation to that effect, the lessor of a building for business purposes is under no legal or implied obligation to keep the leased premises in repairs and tenantable, then defendant comes forward with the defense that the lease sued on was never binding on him. In *Horton v. Early,* 39 Okla. 99, 134 Pac. 436, 47 L. R. A. (N. S.) 314, Ann. Cas. 1915D, 825, we find:

"In the lease of a building for mercantile purposes, there is no implied warranty that it is suitable or properly adapted for the uses to which it is applied, nor that it shall continue to be suitable for the lessee's use or business, or safe from exposure to danger from the elements."

In the lease contract under consideration there was no expressed agreement that the lessor would keep the leased premises in repair, and therefore it follows that defendant could not maintain an action against said lessor or his assigns for damage incurred on account of the premises becoming untenantable.

The lease contract under consideration contained the following provision as to heating the leased premises, and this clause is the only one found in the contract relative to heating:

"Whereas, at present, there is a heating plant in the Colcord Building next adjoining the said Hendrickson Building, and from which heating plant the said premises hereby leased are to be heated; it is hereby understood and agreed that the parties of the first part are to furnish the fuel for the heating of the premises hereby leased, and that the party of the second part is to pay his *pro rata* share for janitor services or help, in the attending of the said furnace."

One of the defenses offered by defendant was that plaintiff failed to comply with this clause in the contract, and failed to furnish the necessary fuel for heating the premises, and for that reason the premises became so cold that they were untenantable and caused the patrons of defendant's pool hall to leave or stay away and not patronize his pool hall during these cold periods. Evidence was introduced on the part of the defendant to the effect that at times fuel was not furnished in sufficient quantities to keep up the proper degree of heat, and evidence was introduced in behalf of the plaintiff tending to prove the contrary, and the court instructed' the jury thereon as follows:

"Evidence has been introduced to the effect that in the month of December, 1911, that the landlord failed to furnish fuel for this heating plant for the heating of these rooms, and that by reason thereof the premises were untenantable during the month of December, 1911. If that were true, and afterwards, after such failure upon the part of the landlord to furnish the fuel, as required by the contract, the tenant, with full knowledge of all the facts, made his payment of rent for the month of January, 1912, he, by so doing, waived that failure upon the part of the landlord to furnish the fuel for the month of December, 1911."

The court gave similar instructions touching the two months preceding the month of December, 1911.

Defendant set up the defense of failure to furnish sufficient fuel in his answer. The plaintiff replied thereto by a general denial. The defendant urges that the giving of these instructions was error, as it operated in effect as an estoppel, and in order for the same to be available it must be pleaded. It is true that estoppel must be pleaded in order that it may be taken advantage of, and conceding, but by no means admitting, that the instructions complained of do submit to the jury a matter of estoppel, yet it is not always necessary to plead estoppel *in haec verba,* because where the facts pleaded entitle a party to a certain relief, the pleadings are sufficient as a plea of estoppel, without a specific designation of it as such. A party entitled to an estoppel need not in all cases formally plead the estoppel. If the facts constituting the estoppel are in any way sufficiently pleaded, he is entitled to the benefit of the law arising therefrom. *City Nat. Bank v. Thomas,* 46 Neb. 861, 65 N. W. 895.

In the case at bar, it is set out that the defendant held the premises under a five-year lease and was to pay the rental monthly in advance, and so paid the same up until the time he vacated the premises, and we think the pleadings warranted the court in submitting the instructions complained of. It was not in controversy, but admitted by both sides, that the monthly rental payments had been duly made as called for in the said contract.

Instruction No. 4 reads as follows:

"Evidence has also been introduced to the effect that during the months of November and December, 1911, and January, 1912, the predecessor of Kress & Co. (who was a man by the name of Watkins) and Kress & Co., after they became the owners of the premises in the latter part of December, 1911, failed to furnish fuel for this heating plant, and that by reason thereof the premises became untenantable. If that were true, and the landlord failed, upon notice of complaint, to furnish a sufficient quantity of fuel for the purposes named, within a reasonable time after having received such notice, the tenant might, thereupon, declare the lease forfeited, so far as he was concerned, and vacate the premises, in which case he would not be liable for the payment of the rent for the unexpired portion of the term."

Defendant urges against this instruction that the "court reads something into the contract in this instruction that is not there, namely, if the lessor 'failed, upon notice or complaint, to furnish fuel,' then this would justify the tenant in vacating." In the light of the evidence introduced at the trial on that particular point, we think the instruction fair and proper. In the heating furnace, gas exclusively was used for fuel. Ordinarily the supply of gas was ample, but upon a few occasions, in unusual and extremely cold weather, the supply of gas would run short, and this deficiency caused the premises to become cold and uncomfortable. The plaintiff had no control over the supply of gas at these times, and was not responsible for the shortage. The mere fact the supply of gas failed in a few rare instances would not, of itself, legally justify the vacating of a five-year lease contract. We believe, as applied to the evidence in this case, the instruction complained of was more favorable to defendant than he was entitled to. He knew the nature of the fuel furnished for the furnace,

and also undoubtedly knew that at rare intervals in extremely cold weather the supply of gas was liable to run short. Somewhat *dehors* the record, it is very probable, during these extremely cold periods, which seldom last more than a day or two in this latitude, and but seldom occur, when it becomes so unusually cold that the gas supply runs short, that but few patrons of the game of pool would desire to engage in the game under such conditions, even though it were possible to heat the premises to the desired temperature. We cannot but conclude that the defense here urged is more subterfuge than a reality.

The court correctly instructed the jury that if they found for the plaintiff, they should fix the amount of recovery at $200 a month for 14 months. The issue in the case was whether or not the defendant was justified in vacating the premises. There was no controversy over the amount of recovery in case the jury found against the defendant upon his plea that he was justified in vacating, because it followed, as a matter of course, that if he was not so justified, then the plaintiff's recovery would be under the terms of the contract, which called for 14 months, the balance of the term, at the contract price of $200 per month.

The defendant assigns as error the refusal of the court to give an instruction requested by defendant to the effect that if the premises were not in the possession of the lessor at the time of the lease, and the same were a subject of controversy in an action in the district court, in which Powell and others were plaintiffs, and Stone and others were defendants, and the lessor knew of the pendency of such action, then the contract sued upon

would be in violation of section 2214, Comp. Laws 1909. The evidence in this case shows that the defendant was fully cognizant of the condition of the title to the lease in controversy at the very time he signed the lease. The defendant testified on this point that at the time the lease was executed, he knew John Connelly had possession of the building, and, further, that Stone told him the matter was involved in a legal controversy, and that a suit had been filed to dissolve the partnership, and that he, Stone, did not know who would acquire the lease at the receiver's sale, but that it was agreed that if Stone was the successful bidder at the sale, then the lease already executed should become effective. This contingency became a reality when Stone became the successful bidder at the receiver's sale on December 21, 1908, and from that date the lease became effective.

One of the grounds urged in the trial court by the defendant for a new trial was certain newly discovered evidence. The defendant, in support of his motion, filed the affidavit of a party, wherein it was set out that this party worked in the building in controversy during the months of December, 1911, and January, 1912, and that on each day thereof he was in the boiler room where the heating plant was located and had occasion to notice the same at these times, and that during these two months no other fuel except gas was used in the said furnace, and that the same was not sufficient to heat the premises.

The granting of a new trial on the grounds of newly discovered evidence is largely within the discretion of the trial judge, and in this case the motion was properly denied, because the evidence was (1) cumulative and (2)

the diligence used to obtain the witness was clearly insufficient.

For the reasons given we recommend that the judgment be affirmed.

By the Court:　It is so ordered.