**WILLIAMS v. EDWARDS et al.**

No. 20448. Opinion Filed March 28, 1933.

Rehearing Denied June 13, 1933.

Wilson & Wilson and Homer Cowan, for plaintiff in error.

Russell G. Lowe and W. M. Bowles, for defendants in error.

BUSBY, J. This is an action on a supersedeas bond executed for the purpose of superseding a judgment of the district court of Oklahoma county. On the trial of the issues the lower court rendered judgment granting in part and denying in part the relief prayed for by the plaintiff. The plaintiff filed a motion for a new trial, which was overruled; thereafter he perfected his appeal to this court. Reversed, with directions to grant a new trial.

The record is complicated and includes a number of legal proceedings connected with the case at bar, as well as considerable oral testimony. We shall as far as possible limit the statement of facts to those matters essential to a determination of the legal questions herein involved. For the purpose of convenience the parties will be referred to as they appeared in the lower court.

The supersedeas bond on which this action is based was executed on the 4th day of September, 1922, and read as follows:

### Supersedeas Bond.
(caption omitted)

"Whereas, on the 24th day of August, 1922, a judgment was rendered in said district court in favor of the plaintiff in the above-entitled action and against said defendants for the sum of $29,014, debt and damages, and costs of suit taxed at $ _____.

"And, whereas, said defendants as plaintiffs in error have commenced proceedings in error in the Supreme Court of this state to reverse and vacate such judgment.

"Now, therefore, we, Cora E. Edwards, also known as Mrs. J. H. Edwards, J. H. Edwards, and Cora E. Edwards, as executrix of the will of W. L. Edwards, deceased, as principals, and J. M. Taylor, W. H. Frazier, Robert Lavington, M. E. Booten, Wm. A. Watkins, A. H. Ezzard, D. L. Cole, Chas. D. Edwards, Cliff Brock, S. J. Trussell, W. F. Kehres, Harry McCoy, George Boardman, R. Swart, W. W. Dearborn, as sureties, undertake and bind ourselves, our heirs, and assigns jointly and severally to said defend-

ant in error, in the sum of $30,000; that the said plaintiffs in error will pay the condemnation money and costs in case said judgment shall be affirmed in whole or in part in the Supreme Court."

(Signatures and acknowledgments and qualifications.)

This bond was given in connection with case No. 30863 in the district court of Oklahoma county, in which case Annabelle Edwards was the plaintiff and Cora E. Edwards et al. were the defendants. A brief analysis of the facts in connection with that case is necessary to a proper understanding of the judgment therein rendered. It appears that Annabelle Edwards and W. L. Edwards were married at Galveston, Tex., in August, 1918, and remained husband and wife until the death of W. L. Edwards in April, 1921. During a portion of their married life they lived in Ranger, Tex., where by their joint effort, they accumulated property of the value of approximately $50,000; about $40,000 of which was in money when they left Texas in 1920. During his lifetime, W. L. Edwards controlled and managed this property. A great deal of the funds were invested in property in Oklahoma after he returned to Oklahoma in 1920, and the property thus acquired was taken in the name of Cora E. Edwards, who was also known as Mrs. J. H. Edwards, the mother of W. L. Edwards. After the death of W. L. Edwards, his wife, Annabelle, commenced suit in the district court of Oklahoma county, same being cause No. 30863, above referred to, against J. H. Edwards and Cora E. Edwards personally and against the estate of W. L. Edwards for the purpose of recovering her proper share of the property owned by herself and her former husband, W. L. Edwards, the theory of her suit being that under the laws of Texas she was owner of an undivided one-half interest therein.

The case was tried in the district court of Oklahoma county, and in addition to a general judgment the court entered of record certain special findings of fact and conclusions of law. The substance of the findings made and the judgment rendered was that the plaintiff Annabelle Edwards was an owner of an undivided one-half interest in and to the property controlled by W. L. Edwards and held in the name of Cora E. Edwards, and that she was entitled to an accounting for rents and profits amounting to a sum sufficient to bring the total value of her interest to $29,014. A summary of the conclusions reached by the trial court in

that case was expressed in conclusion No. 7, which read as follows:

"7. The plaintiff should be awarded the following property and have the following judgment in this action to make up the total of $29,014 in value which it has already been found she is entitled to, viz.:

"The Shoup property at a value of _____ $20,500

"The Ivey note _____ 2,500

"An undivided interest in the diamonds now pledged to the Bank of Commerce at Perry, Okla., to the extent of _____ 5,000

"In value free and clear of any incumbrances thereon. In addition thereto a personal judgment against the defendant for the sum of _____ 1,014.00"

In accordance with the finding of facts and conclusions of law, the gist of which is expressed in the quotation above, the court entered judgment on each of the four items mentioned.

The first portion of the judgment decreed that the plaintiff in that case, Annabelle Edwards, was the owner of the real estate known as the "Shoup" property, and declared that Cora Edwards was holding the naked legal title of that property. The court ordered that Cora E. Edwards convey the property to Annabelle Edwards within 20 days by appropriate conveyance and that, if she failed to convey the property, the decree should be filed with the county clerk and should operate as a conveyance thereof.

The second portion of the judgment declared Annabelle Edwards to be the owner of the note known as the "Ivy" note and the mortgage securing the same, and further declared that Cora E. Edwards held the naked legal title thereof.

The third portion of the judgment decreed the plaintiff Annabelle Edwards to be the owner of an undivided interest in certain diamonds and fixed the extent of that interest by its value in the sum of $5,000. The judgment gave the plaintiff the right of possession of the diamonds until her claim should be satisfied. It further provided that a sale of the diamonds should be had to satisfy the lien. It did not decree, however, in connection with this lien upon the diamonds, a personal liability on the part of any person.

The fourth portion of the judgment was for a money judgment against the defendants in the sum of $1,014, with interest from the 10th day of July, 1922, at the rate of six per cent. per annum. This was the only money judgment rendered · in the action. The journal entry of judgment shows that motion for new trial was overruled in August, 1922, and the defendants required that the court fix the amount of a supersedeas bond to supersede and stay the judgment, and thereupon the court fixed the amount of the supersedeas bond to be given by the defendants in the sum of $30,000, to be conditioned "in the manner provided by law."

The supersedeas bond above set forth was then executed, and an appeal was perfected to this court. Pending the decision on the appeal in this court, the defendants in that cause remained in possession of the real estate. The diamonds which had been pledged to Farmers & Merchants Bank of Perry, Okla., were not recovered by the plaintiff or her assignees until after the cause was affirmed on appeal. The defendants, however, did deposit the "Ivey" note and the mortgage securing it, without assignment or indorsement, with the court clerk of Oklahoma county. They also deposited with the court clerk a deed to the "Shoup" property, without relinquishing possession of the property itself. The case was decided on appeal in this court on the 25th day of November, 1924, and the decision reported in Edwards v. Edwards, 108 Okla. 93, 233 P. 477, and the judgment of the trial court was affirmed. A mandate was later issued to the trial court and the plaintiff was placed in possession of the real estate, known as the "Shoup" property, through a writ of assistance issued on the 5th day of March, 1925. During the process of this litigation, the plaintiff had become heavily indebted to her attorneys for this litigation and other litigation, and also for money advanced to her, and another action was commenced in the district court of Oklahoma county, No. 49282, in which the Security National Bank of Oklahoma City, as administrator of the estate of E. E. Hood, deceased (E. E. Hood being one of the attorneys of the plaintiff), was plaintiff, and Annabelle Baker, who was formerly Annabelle Edwards, and others were defendants. That case was tried on the 9th day of December, 1926, resulting in a judgment in favor of the plaintiff herein and numerous other parties on cross-petitions against the defendant, Annabelle Baker, nee Annabelle Edwards. An execution was issued on this judgment and the various pieces of property awarded Annabelle Baker by the original judgment

were levied on as her property, and in addition thereto the judgment and the cause of action on the supersedeas bond were levied on and sold at sheriff's sale and purchased by the plaintiff herein.

This suit was commenced on the 18th day of April, 1927, by the plaintiff, as owner of the cause of action on the supersedeas bond, against the principals and sureties thereon. In his petition the plaintiff first treats the judgment in cause No. 30863 as a money judgment for the sum of $29,014, with accumulated interest and costs, amounting at the time of the commencement of this action to $27,162.03. After alleging the existence of such money judgment, the plaintiff pleads the execution of the supersedeas bond and attaches a copy thereof to his petition. He then pleads a breach of the conditions of the bond by nonpayment and nonsatisfaction of the judgment, acknowledging, however, the receipt of $8,055, representing the proceeds of the execution sale of the various items of property sold at sheriff's sale in connection with the action, wherein the Security National Bank, as the administrator of the estate of E. E. Hood, was plaintiff. Allowing this credit of $8,055 on the sum alleged to be due, he then stated that there was a balance due of $29,107.03. and prays judgment against the principal and sureties on the supersedeas bond for that amount.

Plaintiff then avers, in substance, that in the event it should be held by the court that the judgment upon which this action is based and the supersedeas bond given in connection therewith should be insufficient to support the theory that the judgment was a money judgment, he be permitted to recover: First, the portion of the judgment which was specifically set forth as a money judgment in the sum of $1,014, plus interest and cost. Second, that he be permitted to recover alleged damages for depreciation in the value of the personal and real property and for the value of the use and occupancy of the real property as well as for alleged waste committed thereon during the time the original litigation was pending in the Supreme Court, on the theory that the giving of the supersedeas bond enabled the defendants in the original action to retain the possession of the property and prevented the plaintiff in that action from obtaining the possession thereof though the bond might be insufficient in form, thereby, in effect, pleading that the defendants were and are estopped from asserting its insufficiency to the extent of the damage suffered by the plaintiff in the original action.

The defendants answered by way of general denial, admitting, however, the execution of the supersedeas bond, and by way of further defense deny that the conditions of the bond sued upon were sufficient to enable the plaintiff to recover anything other than the money judgment rendered in the original judgment. The answer also contains special denials and allegations of particular facts unnecessary to a determination of the issues on this appeal, but appropriate for consideration in the future proceedings in this case by the trial court.

The trial court after hearing the evidence concluded that the supersedeas bond was so drafted that by virtue of its conditions only the specific money judgment for $1,014, with accrued interest and cost, was covered by its terms, and in accordance with that conclusion rendered judgment in favor of the plaintiff and against the defendant for the sum of $1,545.94.

The trial judge denied the plaintiff any further relief, and from this judgment of the court, limiting the recovery on the supersedeas bond to the amount of the money judgment rendered in the original action and denying other relief, the plaintiff has perfected his appeal to this court. Plaintiff incorporates in his petition in error nine assignments of error, seven of which are urged in the brief. We deem it unnecessary to quote verbatim the specific assignments of error, but will say in this connection that the contentions of the plaintiff may be appropriately grouped under four main contentions:

(1) That the original judgment should be treated as a money judgment for the reason that in the finding of facts and conclusions of law, the trial court fixed a specific money value on each of the items of property.

(2) That even though it was not a money judgment, and the bond was not properly conditioned to supersede a property judgment, the terms and conditions of the statute should be treated as a portion of the bond as though they were fully set out therein. This for the particular reason that the order of the court permitting supersedeas provided that the bond should be conditioned as required by law.

(3) That by the giving of the bond, the plaintiff in the original action was prevented from obtaining possession of the

property, and the defendants were thereby estopped from asserting the insufficiency of the bond.

(4) That the defendants are estopped from claiming that the judgment in the original action was not a money judgment for $29,014, because of the recital in the face of the bond that it is a judgment for that sum.

It is contended by the defendants "that the measure of their liability upon the supersedeas bond was the personal judgment of $1,014, with interest and cost, which was the condemnation money and cost, and that the obligation of the bond did not contemplate nor cover the depreciation in value of the 'Shoup' property, the rental value thereof pending appeal, nor the taxes that accumulated and were undischarged" (quotation from brief of defendant).

It appears from a careful examination of this record and the briefs of the parties herein that five principal questions are presented to this court for determination:

(1) Can any part of the original judgment rendered in case No. 30863, except the item of $1,014, plus accrued interest and cost, be properly considered and treated as a money judgment?

(2) Are the conditions of the supersedeas bond so written that they can be considered to supersede anything except a money judgment?

(3) If the supersedeas bond is so conditioned that it superseded only a money judgment, are the courts authorized to reform the conditions thereof and read into the bond the terms and provisions appropriate for the stay of execution on the portions of the judgment which relate to specific real and personal property?

(4) If the court is not entitled to reform the bond and read into it proper conditions, does the positive recital in the bond that the judgment superseded was a money judgment for the sum of $29,000, prevent and estop the principal and sureties thereon from asserting that it was any other kind or character of judgment?

· (5) If such recital does constitute an estoppel, is the same sufficiently pleaded in this action to entitle the plaintiff to avail himself thereof?

An examination of the judgment rendered in connection with the original action discloses that in the decree proper no mention is made of a personal liability for the payment of money except as to the item of $1,014, and the costs of the action, for which a personal money judgment was rendered. The other portion of the judgment fixed and determined property interests of the plaintiff in that suit. It decreed to her specific real and personal property limiting, however, her interest in that portion of the personal property designated as "the diamonds," to a lien of the value of $5,000, but providing no personal liability for that sum. The value of each of the property items is fixed in the findings of fact and conclusions of law which preceded the judgment. These findings of facts and conclusions of law are authorized by the provisions of our statutes, and are a proper subject of consideration in a direct review of a judgment of that court. They are the basis of the judgment rather than a part of it. Assuming, but not holding, that it would be proper to consider such findings of facts for the purpose of impeaching or adding to the judgment where it is considered in a collateral proceeding, the consideration of the findings of fact would have no bearing on the judgment rendered in this case. The judgment itself is unambiguous and clear in its terms and meaning. It is likewise apparent that it was not the purpose of the trial court in fixing a value on each of the several items of property to determine such value for the purpose of rendering a personal judgment. The value was fixed and determined for the purpose of arriving at a fair determination of what portion of the property held by the defendants in that action should be impressed with a trust character in the hands of the defendants. With the exception of the $1,014 item and the cost, no portion of the judgment under consideration can be considered a money judgment.

We will consider together the second and third questions which involve the effect of the conditions of the supersedeas bond and the propriety of enlarging their meaning by construction or reformation. In this connection it should be observed that we use the term "condition" in a restricted rather than in a general sense, and that we are not at this time considering the effect of the recital in the bond. The bond in this case was conditioned that "the plaintiff in error will pay the condemnation money and cost in case said judgment shall be affirmed in whole or in part in the Supreme Court." It will be observed that the language of this bond is of statutory origin, and is

based upon the first subdivision of section 543, O. S. 1931, which section reads as follows:

"543—Proceedings in error not to stay execution unless undertaking executed.

"No proceeding to reverse, vacate or modify any judgment or final order rendered in the county, superior, or district court, except as provided in the next section, and the fourth subdivision of this section, shall operate to stay execution, unless the clerk of the court in which the record of such judgment or final order shall be, shall take a written undertaking, to be executed on the part of the plaintiff in error, to the adverse party, with one or more sufficient sureties, as follows:

"First. When the judgment or final order sought to be reversed directs the payment of money, the written undertaking shall be in double the amount of the judgment or order, to the effect that the plaintiff in error will pay the condemnation money and costs, in case the judgment or final order shall be affirmed, in whole or in part.

"Second. When it directs the execution of a conveyance or other instrument, the undertaking shall be in such a sum as may be prescribed by the court, or the judge thereof, to the effect that the plaintiff in error will abide the judgment, if the same shall be affirmed, and pay the costs.

"Third. When it directs the sale or delivery of possession of real property, the undertaking shall be in such sum as may be prescribed by the court or the judge thereof, to the effect that during the possession of such property by the plaintiff in error, he will not commit, or suffer to be committed, any waste thereon, and if the judgment be affirmed, he will pay the value of the use and occupation of the property, from the date of the undertaking until the delivery of the possession, pursuant to the judgment, and all costs. When the judgment is for the sale of mortgaged premises, and the payment of a deficiency arising from the sale, the undertaking must also provide for the payment of such deficiency.

"Fourth. When it directs the assignment or delivery of documents, they may be placed in the custody of the clerk of the court in which the judgment was rendered, to abide the judgment of the appellate court, or the undertaking shall be in such sum as may be prescribed as aforesaid, to abide the judgment and pay costs, if the same shall be affirmed."

The condition incorporated in the bond is a duplication of the provision of the first subdivision of the statute above quoted, which provides the condition of supersedeas bonds given where the judgment sought to be reversed directs the payment of money. A comparison of the language of the other subdivisions of the statutes reveals that the bond wholly fails to comply with the requirements of the statute providing the conditions of bonds to suspend the effect of judgments other than for money. Applying the statute to the case at bar the third subdivision of the section above quoted is applicable to that portion of the judgment now under consideration, which directs the delivery of the possession of the "Shoup" property. That subdivision provides the terms which should have been incorporated in this bond.

No particular form is prescribed by the provision of this statute for the superseding of a judgment for the delivery or sale of personal property. This court has held, however, that it is proper for the trial court to provide for the staying of execution of judgments which are not specifically mentioned in this statute, and has also held that the trial court may in such cases provide for appropriate provision in the bond executed in such cases pending appeal. American Surety Co. v. Marsh, 146 Okla. 261, 293 P. 1041.

It is the contention of the plaintiff in this cause that appropriate provisions should be treated as appearing in the bond even though they are absent therefrom, on the theory that the statute itself should be considered as a part of the bond. With this contention we cannot agree. This court has held in two well-considered cases that the sureties on a supersedeas bond will be held only in accordance with the contract that was executed, and that the court is not authorized to rewrite the contract and thereby impose upon such sureties liability which they did not assume. We refer to the case of Lyngholm v. Atkins, 140 Okla. 36, 282 P. 129, and the case of Local Building & Loan Association v. Hall, 145 Okla. 206, 292 P. 68. In the Lyngholm Case a condition was incorporated in the bond which was identical with the condition of the bond in the case at bar, and the question was whether such a condition rendered the sureties on the bond liable for the value of the use and occupancy of the property where the judgment was for the possession of real property. The court held in that case that the provisions in the bond providing for the payment of condemnation money referred only to money judgment, and was not sufficient to render the sureties on the bond liable in connection with a judgment for the

delivery and possession of real property. In the conclusion of the opinion, this court in the Lyngholm Case used the following language:

"Atkins was not condemned to pay anything in the former judgment. Possessing the land was all that was adjudged against him. Therefore, there was no condemnation money to pay."

So it will be noted in the case at bar that the only condemnation money which the defendants were condemned to pay was the sum of $1,014, with accrued interest. The other portion of the judgment referred to possession of land and personal property and interests therein.

In the Local Building & Loan Association Case cited, supra, a similar question was before the court, and a similar decision was rendered. In that case this court quotes with approval from the Kansas court in the case of Henrie v. Buck, 39 Kan. 381, 18 P. 228, the following language, which is peculiarly adapted to the case at bar:

"The obligors upon the bond are mere sureties, and they have a right to insist upon the express terms of the undertaking. It is a recognized rule of the law that the liability of sureties to a statutory undertaking cannot be extended by implication nor enlarged beyond the express terms of their contract. Hays v. Closon, 20 Kan. 120. It is possible that the person who prepared the undertaking mistakenly omitted the words 'from the date of the undertaking until the delivery of the property'; but the contract of the obligors is expressed in that undertaking, and the possibility that the scrivener may have omitted a clause which changed the sense of the undertaking cannot extend their liability beyond the necessary import of the words used to express the same."

This court also used the following language in arriving at the conclusion reached in the Local Building & Loan Association Case, page 210 of 145 Okla.:

"But we are here dealing with a bond that contained no such stipulation and no language equivalent thereto, and to hold it sufficient to bind the sureties to pay the value of the use and occupancy of the premises pending the former appeal would be to violate several well-established principles of law, viz.: Courts will not write contracts for the parties; sureties cannot be held liable beyond the obligation assumed by them; courts will not, under the guise of construction, read into a contract provisions not therein contained; and courts will not judicially legislate."

We must, therefore, conclude that as far as the conditions of the bond are concerned, it is so drafted that it provides for the payment only of the money judgment rendered in the former suit, and the court is without authority to enlarge its conditions by reformation.

There are a number of decisions by this court which announce the principle that, even though a bond does not strictly comply with the statutory provisions, it may still be treated as a common-law obligation, and bind the sureties in accordance with its terms. This line of decisions was carefully considered in the Lyngholm Case cited, supra. The principle therein announced has no application to the case at bar. It covers and concerns those situations where the conditions of the bond appearing in the face thereof, are sufficient to create liability, and that the only defect of the bond is that the exact language of the statute is not incorporated therein. In such cases this court has held that the sureties on the bond should be held liable in accordance with the terms of the instrument which they signed, thereby enforcing the contract made by them as a common-law obligation in accordance with its terms. In the case at bar language which would create a common-law liability in addition to liability for the payment of a money judgment, is not incorporated within the conditions expressed in the bond.

We now pass to a consideration of the effect of the positive recital in the bond that the judgment appealed from is a money judgment for the sum of $29,014. Before considering the legal effect of this recital, let us pause to view in a general way the judgment of the court in the basic action, and especially that portion of it providing for a supersedeas bond. The court provided that the execution of the judgment should be stayed upon the execution of a bond in the sum of $30,000, conditioned as required by law. The first subdivision of section 543, O. S. 1931, supra, provides the amount for which an undertaking shall be made for the purpose of staying the effect of a money judgment. It is therein provided that that amount shall be double the amount of the judgment or order. Applying that provision to the case at bar, had it been the intention of the trial court to provide only for a supersedeas of the money portion of the judgment, the amount of the bond need not have been fixed at all, and if it had been fixed by the court it should have corresponded to the provision

of the statute which would have required a bond for the sum of $2,028. It is quite obvious and apparent that, when the trial court fixed the amount of the supersedeas bond in the sum of $30,000, it was intended that when given the bond should and would supersede more than the mere money judgment of $1,014. It likewise appears to us equally obvious that when the bond was executed, it was not intended by the principals or sureties thereon that it should operate to supersede only the $1,014 item in the judgment. It is interesting to note in this connection that the sureties on this bond were 15 in number and qualified for amounts ranging from $1,000 to $5,000 each, and scheduled property subject to levy amounting to a total aggregate value in excess of $60,000. To assume this vast amount of property was scheduled to supersede a judgment of $1,014 would be a strange and violent assumption, and border upon being ridiculous.

The apparent and obvious intention of the parties, however, would not authorize the court to reform or change the conditions of the bond as was pointed out in the case of Local Building & Loan Association v. Hall, supra. However, there is a distinction between the case at bar and the Local Building & Loan Association Case, in this: that in the Local Building & Loan Association Case, the bond sued upon correctly recited the nature and character of the judgment in the basic action, whereas, in the case at bar, the principal and sureties on the supersedeas bond treated the entire judgment as a money judgment for $29,000, and incorporated in the bond a positive recital to that effect. This places squarely before us the question of whether or not the parties executing a bond are estopped to deny the truth of the recitals of fact therein. A good definition of "estoppel" appears in 10 R. C. L. at page 675. We quote:

"An estoppel may be said to arise when a person executes some deed, or is concerned in or does some act, either of record or in pais, which will preclude him from averring anything to the contrary. Or, as Lord Coke defined it: 'It is called an estoppel or conclusion, because a man's own act or acceptance stoppeth or closeth up his mouth to allege or plead the truth."

The application of the principles of estoppel to recital in bonds was early recognized by this court. In the case of Richardson v. Penny, 10 Okla. 32, 61 P. 584, the second paragraph of the syllabus by the court reads as follows:

"The obligors upon an appeal or supersedeas bond are bound by the recitals in the bond, and where the bond recites that a certain action was pending in district court between certain parties, and that a judgment was rendered in said cause, the obligors in such bond, in a suit thereon, are estopped from saying no such suit was pending or that no valid judgment was rendered therein."

Chief Justice Burford, speaking for the court in that case, used the following language in the opinion:

"In Stow v. Wyse, 2 Conn. 214, Judge Doggett said:

" 'Without multiplying authorities upon a point rendered clear by numerous cases, it is sufficient to state that where a party has solemnly admitted a fact by deed under his hand and seal, he is estopped, not only from disputing the deed itself, but every fact which it recites.'

"And this principle is based upon sound reason. It would be manifestly unfair and unjust to permit the defendants to keep silent upon a material question which it was their duty to bring to the knowledge of the trial court, and after getting the benefit of a trial and hearing on the issues presented, and after giving a bond which in effect stayed the judgment of the lower court, and enabled them to still enjoy the use and profits of the property the court had adjudged they were not entitled to, and after getting the cause reviewed in the Supreme Court, and all had been decided adverse to them, still hold on to the property, and when suit is brought on the bond allow them to say, 'We were only trifling with the rights of the adverse party and with the courts. No cause was ever pending in the courts.' Having executed their solemn obligation to pay to the plaintiff the value of the use and occupation of the real estate in controversy, and recited in this obligation, that a suit was pending between the adverse parties in the district court, and that judgment was rendered against them, the law says they shall not be permitted to contradict such recital, but shall be bound thereby."

This court again considered the effect of recital in a bond in the case of Blanchard v. Anderson, 27 Okla. 732, 113 P. 717, and in that case Justice Kane, who delivered the opinion of the court, announced the application of the rule which estops the principal and sureties on a bond from denying the terms of the recital therein in the following language:

"Upon the second proposition the bond in controversy recites that the value of the property is $132. As the execution of the bond was not denied in the answer, both its

254

execution and contents are admitted, and the defendants are estopped from denying the recitals contained therein. The original judgment was for $120, or $12 less than the agreed value of the attached property. It is true that with the costs the judgment would be somewhat in excess of the value of the property as fixed by the terms of the bond, yet the costs and interest are properly charged against the losing party in cases of this kind. In Norton v. Miller, 25 Ark. 109, it was held that both the principal and surety on a bond are estopped from denying the truth of its recital."

The principle of the law involved was set forth in syllabus paragraph 2 of the court, reading:

"Where a forthcoming bond in attachment recites the value of the property attached in a suit thereon, where the execution of the bond is admitted, the defendants are estopped from denying the truth of its recitals."

Again, in the case of Burnham v. Edwards, 125 Okla. 272, 257 P. 788, 53 A. L. R. 800, this court announced the following rule in syllabus paragraph 2:

"The obligor in a bond cannot contradict the recital of a particular fact recited in the instrument, **such as the existence of a judgment. * * *"**

In that case the court in the basic action rendered an alternative judgment in favor of Tony Edwards, giving him the choice of electing within five days to accept a money judgment against William Brooks in the sum of $1,930, or retain and take the possession of certain land involved in the action. Edwards elected to take the money judgment. A supersedeas bond was executed for the purpose of perfecting an appeal. In an action brought against the principal and sureties on the bond, they contended that the judgment in the original action was void on account of its being an alternative judgment, and that no final or subsequent order thereon was made or rendered after the plaintiff had elected to take under one of the alternatives. In disposing of this question, the court in the opinion applied the principle of estoppel by recital, and held that the principal and sureties on the bond could not deny the validity and existence of the judgment in the following pertinent language in the opinion:

"Pertaining to the other matter, to wit, the nature of the judgment urged by plaintiff in error, the well-established rule of estoppel precludes him from successfully urging such matter as a defense to this action. Whether there was rendered such a judg-

ment as would have withstood a direct attack need not be discussed. It is enough to say that the bond recites a judgment, and such a judgment as the court has jurisdiction to render. The obligor in a bond cannot contradict the recital of a **particular fact** recited in the instrument, such as the existence of a judgment."

In connection with these authorities, it should be observed that in the case of the Local Building & Loan Association v. Hall, supra, the case of Richardson v. Penny, supra, was cited and recognized as authority for the proposition that sureties upon an appeal bond are bound by the recital therein stated. It was held, however, not to be applicable to the Local Building & Loan Case for the reason that the recitals in that bond did not vary from the terms of the judgment.

It may be appropriately said that the situation existing in the Local Building & Loan and Lyngholm Cases, supra, are exactly reverse from the situation in the case presented at bar in this respect: In those two cases, the obligees on the bond were undertaking to prevail upon the court to incorporate within the bond provisions and conditions that did not exist therein, whereas, in the case at bar, the principal and sureties on the bond are the ones who are seeking to avoid the consequence of the positive recital of fact contained in the instrument. If we considered nothing other than the face of the bond in this case, the liability of the principal and sureties on the bond by virtue of the recital and terms thereof would be $29,014, plus cost.

In this case the parties executing the supersedeas bond treated the entire judgment in the basic action as a money judgment. They apparently procured the stay of execution on the judgment by executing the bond which recited therein that it was a money judgment for $29,000. Treating it as a money judgment for that amount, the bond is properly conditioned for the payment thereof. Now, after they have secured the benefits of that bond, and have been enabled to retain possession of the real estate during the determination of their case on appeal, they seek to deny the force and effect of their own recital in the bond, and to persuade the courts that the statements therein contained are untrue, and thereby avoid in a large measure their liability on the obligation. This seems to us to be an appropriate occasion for the application of the principles of estoppel by recital which, as

we have previously seen, are recognized by the former decisions of this court.

In the application of the doctrine of estoppel to the case at bar, it should be remembered, however, that the doctrine of estoppel is applied in law and equity for the purpose of preventing the perpetration of a wrong, or to prevent parties from avoiding the just consequences of their contracts and agreements. In applying the doctrine of estoppel to a particular case, the courts should be and are careful to prevent its use for the purpose of enabling the one claiming its benefits to penalize the opposite party. As was said in the case of Noble v. Johnson, 145 Okla. 46, 291 P. 26, in syllabus paragraph 4:

"The doctrine of estoppel is not intended to work a positive gain to a party; its office is to protect a party from a loss, which, but for the estoppel, he could not escape."

As applied to the case at bar, the plaintiff should not be permitted to claim the benefits of the recital in the bond that the judgment is for the sum of $29,000, unless he has suffered a detriment by reason of the execution of the bond, and then he should be permitted to recover only to the extent of the detriment suffered. In arriving at the amount suffered, it will be necessary for the trial court to determine what amount plaintiff would have been entitled to recover had the bond correctly recited the judgment and its different elements and factors and the conditions of the bond been so drafted as to properly supersede each portion of the judgment. In determining the amount which the plaintiff is entitled to recover on the supersedeas bond, it is clear that the defendants are liable for the $1,014 money judgment, plus accrued interest and cost. This liability is not disputed by them.

A fair interpretation of the judgment in connection with the "Shoup" property is that it is a judgment for the possession as well as an appropriate conveyance thereof, and the plaintiff is entitled to recover damages for any waste committed thereon as well as the value of the use and occupancy of the premises between the date of the execution of the supersedeas bond and the date of the actual recovery of the possession of the property by the plaintiff in the basic action. It may also be stated in connection with this item that subsequent developments in the litigation revealed that before judgment was rendered in the original action a mortgage existed against the Shoup property. Since the mortgage existed against the prop-erty at the time the supersedeas bond was executed, it is not a proper element of recovery on the supersedeas bond. In other words, the plaintiff cannot recover from the sureties the amount of such mortgage.

It may be observed that the record discloses that the "Ivey" note and mortgage was posted with the court clerk, and it is claimed by the defendant that this was a compliance with subdivision 4 of section 543 cited, supra. If that provision of the statute was properly complied with, in such a manner as to supersede the judgment as of that particular item independent of the bond, the plaintiff herein should not be permitted to claim any detriment in connection therewith by reason of the execution of the bond.

With reference to the judgment decreeing to the plaintiff a lien to the extent of $5,000 interest in the diamonds subject to a lien of the Farmers & Merchants Bank of Perry, Okla., the plaintiff is entitled to recover the depreciation in value of such lien for the period of time during which the supersedeas bond stayed execution of the judgment.

We also observe in connection with this case that the plaintiff is proceeding upon the theory that the prices paid at the subsequent judicial sale in an action brought by the Security National Bank, administrator of the estate of E. E. Hood, deceased, against Annabelle Baker, nee Edwards, are conclusive evidence of the value of the property and of the amount realized by the plaintiff on the judgment in cause No. 30863. The sureties on the supersedeas bond were not parties to that action, and it was an entirely different proceeding from the basic action on which the supersedeas bond herein concerned was executed. Therefore, the defendants in this action are not conclusively bound by the amount bid at such judicial sale. There are many questions that will present themselves to be determined by the trial court in the further proceedings in this case in determining the amount of detriment that the plaintiff or his assignees suffered and the extent to which he may be entitled to invoke and claim the benefit of the doctrine of estoppel by recital. We will not undertake to anticipate the questions that will arise, nor to dispose of them in this opinion.

Having decided that the recital of the existence of a money judgment in the supersedeas bond estops the principal and sureties on the bond from denying the truth of such recital to the extent that the oblige-

256

in such bond has suffered detriment by reason of its execution, we proceed to a consideration of the sufficiency of the pleadings in this cause to raise the question of estoppel. It is a generally recognized rule of pleading in this state that a party claiming the benefit of the doctrine of estoppel must present the matter to the court by appropriate pleadings. However, this court has not strictly applied that rule, and it is recognized in this jurisdiction that if the facts constituting the estoppel appear in his pleading, a party is entitled to claim the benefits of the application of the law thereto. As the rule is stated in the case of Jones v. S. H. Kress & Co., 54 Okla. 194, 153 P. 655, in syllabus paragraph 3:

"A party entitled to an estoppel need not in all cases formally plead the estoppel. If the facts constituting the estoppel are in any way sufficiently pleaded, he is entitled to the benefit of the law arising therefrom."

The same rule is recognized in the case of Hunt v. Tulsa Terrazzo & Mosaic Co., 157 Okla. 174, 11 P. (2d) 521, in syllabus paragraph 3 of the court.

We have carefully examined the pleading of the plaintiff in this case with a view to determining whether or not the question of estoppel by recital is sufficiently presented to be considered herein. The pleading of the plaintiff in this respect is not a model by any means, and does not clearly and consistently present this issue. However, a copy of the bond containing the recital is attached to the pleading, and the facts showing the suffering of a detriment by reason of an execution and approval of the bond appear in the petition. Therefore, applying the liberal rule with reference to the pleading of estoppel above mentioned and approved by this court, we are of the opinion that the facts in connection therewith are sufficiently pleaded to entitle the plaintiff to all the benefits of the law arising therefrom. The judgment of the trial court will be reversed, with directions to grant a new trial and proceed in accordance with the views herein announced.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and WELCH, JJ., concur.