The CLEVELAND TRUST COMPANY, an Ohio Banking Corporation, Chase Manhattan Bank (N.A.), Community Bank of Linden, Appellants,

v.

The STATE of Oklahoma ex rel. Joe B. HUNT, Insurance Commissioner and Receiver of Community National Life Insurance Company, an Oklahoma Life Insurance Corporation in proceedings for liquidation, Appellee.

Nos. 45838–45840 Consolidated under No. 45838.

Supreme Court of Oklahoma.

Oct. 12, 1976.

Fenelon Boesche, Lance Stockwell, of Boesche, McDermott & Eskridge, Tulsa, for appellant, The Cleveland Trust Co.

Frederic Dorwart, C. D. McDoullett, Jr., of Holliman, Langholz, Runnels & Dorwart, Tulsa, for appellants, Chase Manhattan Bank (N.A.) and Community Bank of Linden.

Boone, Ellison & Smith, L. K. Smith, Jones, Givens, Brett, Gotcher, Doyle & Atkins, Deryl L. Gotcher, Doerner, Stuart, Saunders, Daniel & Langenkamp, William C. Anderson, Tulsa, for appellee.

IRWIN, Justice:

These three appeals, consolidated under Case No. 45,838, involve liquidation proceedings of Community National Life Insurance Company (CNL), an insolvent insurance company. Each appellant (Cleveland Trust Company, Chase Manhattan Bank and Community Bank of Linden) filed separate claims in the liquidation proceedings. Appellants filed separate appeals from orders of the trial court specifying how the gross amount of their respective claims from which their pro rata share of the distributable assets of CNL would be determined.

The appeals involve similar facts and identical legal issues. Disposition of Case No. 45,838, in which Cleveland Trust Company (Cleveland) is the appellant, will dispose of all issues presented in Cases No. 45,839 and 45,840. Therefore, we will confine our discussion to Cleveland's appeal only.

This litigation involves the fraudulent issuance (without consideration) of purportedly "paid up" life insurance policies by CNL and the assignment of those policies to Cleveland as collateral on loans made by Cleveland. Certain individuals, referred to collectively as insured-borrowers, acting in concert with at least one officer of CNL, fraudulently procured several purportedly "paid up" life insurance policies issued by CNL. CNL received no consideration for the policies. Insured-borrowers proceeded to negotiate loans with Cleveland and offered the "paid up" policies as security for the loans. Before closing the loan transactions, Cleveland contacted CNL and received assurances, on which Cleveland had every reason to rely, that the policies were valid and "fully paid". The loan transactions were completed, the purportedly "paid up" insurance policies were assigned to Cleveland, and Cleveland took all steps required by CNL to protect its security.

Cleveland loaned approximately $300,000.00 and the cash surrender value of the purportedly "paid up" policies assigned to it as security was approximately $500,000.00. It appears that each general creditor's pro rata share will be approximately 35% of his gross claim.

Receiver contended that since the insurance policies had been issued without consideration, Cleveland had no claim. In the alternative, receiver contended Cleveland's gross claim from which its pro rata share should be determined should be based upon the amount of the loans ($300,000.00) for which the policies were assigned as security.

Cleveland contended that receiver was estopped to deny the validity and enforceability of the insurance policies it held as security and that the gross amount of its claim from which its pro rata share should be determined should be the cash surrender value of the policies ($500,000.00).

The trial court found that receiver was estopped from asserting the defense of failure of consideration and ordered that the gross amount of Cleveland's claim from which its pro rata share would be determined would be the amount of the loans for which the policies were taken as security. The Court of Appeals, Division No. 1, reversed the judgment of the trial court and ordered that Cleveland's gross claim be based upon the cash surrender value of the policies. Receiver seeks certiorari.

Receiver did not challenge on appeal the trial court's determination that he was estopped from asserting the defense of failure of consideration. Cleveland brings the estoppel determination into play on appeal by contending the trial court's ruling on the estoppel issue earlier in the litigation precluded its taking into consideration, when dividing the assets set aside for general creditors, the fact CNL received no consideration for the policies. Cleveland argues that by reason of the unconditional assignment of the policies to it by the insured-borrowers that it is in the same class of creditors and has the same rights as all other policy "owners"; that creditors of the same class should have their pro rata share of a fund designated for the satisfaction of their claims determined by a uniform method of computation; and it is discriminatory and preferential to apply a different method of computation to one creditor's claim because it resulted from a security interest rather than by purchase or investment. In the eyes of the law, or so goes Cleveland's argument, the full value of the policies has been paid and as "owner" of the policies its claim must be based on the cash surrender value of the policies.

Cleveland's argument with respect to the extent and effect of the estoppel decreed by the trial court does not consider the purpose for which the doctrine of equitable estoppel was originally conceived. It was originally developed to protect an individual from a loss which, but for the estoppel, he could not escape. *Cuneo v. Champlin Refining Co.,* 178 Okl. 198, 62 P.2d 82 (1936). It is employed to prevent an injustice [*Johnson v. United States Automobile Ass'n.,* Okl., 462 P.2d 664 (1969)] and to promote justice [*Wisel v. Terhune,* 201 Okl. 231, 204 P.2d 286 (1949)] but does not operate to work a positive gain to a party. *Williams v. Edwards,* 163 Okl. 246, 22 P.2d 1026 (1933).

Prior to the commencement of these proceedings Cleveland could have fully enforced its claim against CNL only by invocation of the equitable doctrine of estoppel due to an absolute failure of consideration for the policies. In these proceedings Cleveland was permitted to participate as a creditor by reason of such estoppel, but its gross claim was limited to the amount of its actual economic detriment. Although, in appearance, this entire litigation has proceeded as a contest between Cleveland and receiver, with receiver representing the interests of CNL, actually the trial court was determining the basis upon which the gross claims of creditors would be allowed and fashioning a fair and equitable remedy between the general creditors.

There being an insufficient fund to pay the creditors' claims, what factual circumstances were before the district court when it exercised its equitable powers? We first note that both Cleveland and the general policy owners were innocent victims of the fraud. No equitable doctrine would

justify compelling either the policy owners or Cleveland to shoulder more than their fair share of the loss generated by such fraud. All the funds available for distribution were paid in by the general policy owners and neither Cleveland nor its assignor-insured-borrowers contributed to the fund because the policies were issued without consideration. The general creditors' gross claims are based upon their actual economic detriment and the amount of Cleveland's loans, as distinguished from the surrender value of the policies, constitute Cleveland's actual economic detriment.

■ As a class, a group of similarly situated creditors may have rights as against some other groups, but no creditor may exercise rights which will secure to himself a larger percentage of the indebtedness than the percentage of indebtedness due to fellow creditors of the same class. *McFarling v. Demco, Inc.*, Okl., 546 P.2d 625 (1976). Equity requires a pro rata distribution of the assets available for the satisfaction of claims to all members of the class [*Little v. Gould*, 103 Okl. 173, 229 P. 616 (1924)] and among creditors of the same priority, equality is equity. *Underwood v. Phillips Petroleum Co.*, 155 F.2d 372 (10th Cir. 1946).

■ Had no fraudulent conduct been involved and CNL remained solvent, under the terms of the assignment to Cleveland, Cleveland could have surrendered the policies and been entitled to their cash surrender value. Any amount received by Cleveland in excess of the total obligations owed to Cleveland by the insured-borrowers would have been held in trust by Cleveland for the use and benefit of the insured-borrowers.

Had no fraudulent conduct been involved, Cleveland (or jointly with the insured-borrowers) in the liquidation proceedings would have been entitled to have its (or their) gross claim based on the cash surrender value of the policies. Cleveland would have been entitled to all funds distributed until it received the full amount due and owing from the insured-borrowers.

The insured-borrowers would have been entitled to the balance after Cleveland received the full amount due and owing.

The fraudulent conduct of the insured-borrowers and an officer of CNL changes the situation entirely. If Cleveland's gross claim is allowed upon the amount of its loan ($300,000.00) instead of the cash surrender value of the policies ($500,000.00) Cleveland and the general policy owners would share equally in the $300,000.00 loss due to the fraud. Although Cleveland's gross claim would be reduced $200,000.00 because of the fraud, it would still be based on Cleveland's actual economic detriment. On the other hand if Cleveland's gross claim is allowed to be based upon the cash surrender value of the policies ($500,000.00) Cleveland's gross claim would be unaffected by the fraud.

The trial court by estopping Receiver from asserting the defense of failure of consideration for the policies recognized Cleveland's rights to participate as a creditor of CNL in the liquidation proceedings. This estoppel did not operate to work a positive gain for Cleveland or give it preferential treatment. By requiring Cleveland's gross claim be based upon the amount of its loan instead of the cash surrender value of the policies, the trial court imposed upon Cleveland its pro rata share of the loss due to the fraudulent conduct of the insured-borrowers and an officer of CNL. In our opinion, the trial court correctly computed the gross claim of Cleveland and the judgment should be affirmed.

Certiorari granted; Decision of the Court of Appeals in Cases No. 45,838; 45,839; and 45,840; consolidated under No. 45,838, reversed and vacated; and judgment of the trial court in all three cases affirmed.

All the Justices concur.

SIMMS, J., having certified his disqualification in the above cases, the Honorable C. F. BLISS, Judge of the Court of Criminal Appeals was appointed to serve in his stead.