Baker H. Melone and L. P. Melone, for plaintiff in error.

D. M. Cavaness, for defendants in error.

BAYLESS, V. C. J. Bartlett Mortgage Company appeals from the action of the district court of Blaine county refusing to revive a judgment in favor of it and against Harvy James Morrison et al.

The objection to the motion to revive was based upon the ground that the judgment had become dormant and more than one year had passed thereafter, by reason of which the court was without authority to revive the judgment over the objection of defendants. Bartlett's theory was that it was precluded by law from issuing execution for a period of time after judgment was rendered, and that this period should be deducted from the life of the judgment in determining whether sufficient time had elapsed to bring about dormancy. It, likewise, urged that its judgment now is in the nature of a deficiency judgment and as such dates from the ascertainment of a deficiency at the time of the confirmation of the sheriff's sale, and therefore, revivor is not precluded.

The undisputed record facts are: Judgment was rendered September 1, 1930; an order of sale was issuable after March 1, 1931; an order of sale was issued March 11, 1931; the sale was conducted April 13 1931; the sale was confirmed April 29, 1931, and the amount of the deficiency found on that date; the motion to revive was filed March 1, 1937; the hearing thereon was set for March 20, 1937; and the order denying revivor was made March 27, 1937.

It is the contention of the defendants that the judgment was not only dormant at the time the motion to revive was filed, but that the year within which the dormant judgment might be revived would expire before the court could hear the motion on the date set; and that the ascertainment of the amount of the deficiency at the time of the confirmation was not a judgment.

Several matters were argued, but only two points need discussion. (1) Was the order of April 29. 1931, ascertaining the amount of the deficiency, a judgment? (2) When did the judgment become dormant?

Much of the controversy arises over divergent views as to the nature and extent of a judgment in a foreclosure action, and especially regarding deficiency judgments. From the brief of Bartlett it appears that the judgment rendered September 1, 1930, and the so-called deficiency judgment rendered April 29 1931, are separate, independent judgments.

Section 424, O. S. 1931 (12 Okla. Stat. Ann. sec. 686), governs judgments in foreclosure actions, and the pertinent parts read:

"In a action to enforce a mortgage, * * * a personal judgment or judgments shall be rendered for the amount or amounts due as well as to the plaintiff as other parties to the action having liens upon the mortgaged premises by mortgage or otherwise. with interest thereon, and for sale of the property charged and the application of the proceeds: or such application may be reversed (reserved) for the future order of the court, and the court shall tax the costs, attorney's fees and expenses which may accrue in the action. * * *"

It must be noticed that it is commanded, by the use of the word shall, that judgment be taken for the money due. This means simply that the amount of the debts, for which a lien or charge on the property has been given, shall be ascertained and personal judgment rendered therefor. The only relaxation in this command we recognize is when the personal obligation is waived and the debt is established against the mortgaged premises only. Tracey v. Crepin. 40 Okla. 297. 138 P. 142; Brocker v. Stallard. 34 Okla. 612 126 P. 781; and Kerr v. McKinney, 69 Okla. 88, 170 P. 685. It is then commanded that the sale of the property be ordered. It is then commanded that the application of the proceeds arising from the sale of the property shall be ordered, but with the proviso that the matter of the application of these proceeds may be reserved for future consideration. It is then commanded that judgment shall be rendered taxing the costs. attorney's fees. and expenses. Therefore, it is arranged by statute that the issues between the parties shall be decided in one judgment, except as to the application of the proceeds arising from the sale conducted under the judgment.

In this respect. our procedure relating to so-called deficiency judgments falls within the history of the subject as set out in 42 C. J. 290, sec. 1974, et seq., as follows:

"Under the original equity practice, unmodified by any statute or authorized rule of court, a proceeding to foreclose a mortgage was strictly in rem, and consequently, the court had no power to render a personal judgment against the mortgagor or any other defendant * * *.

"Since this procedure subjected the debt-

or to double litigation, statutes have now been enacted in most jurisdictions, which permit the court either to include in the foreclosure decree a provision ordering the payment of the deficiency if any shall arise. * * *"

In other words, once our trial courts are vested with jurisdiction in a foreclosure action, they render judgment for the debt once and for all, order the sale of the property, and provide that if the property fails to sell for sufficient to pay the judgment debt, an execution may issue against the debtor's property generally. In this aspect of the case the ascertainment of the deficiency becomes a mere clerical act and partakes of none of the aspects of a judgment.

It is customary to speak of deficiency judgments, but strict attention to expression would require the use of words designating a deficiency on a judgment. In other words, simply a balance owing on a judgment after part has been paid by the application of the proceeds of the sale of the security. The language in Paschal Inv. Co. v. Atwater, 174 Okla. 356, 50 P.2d 357, at page 359, as follows:

"Clearly plaintiff is not entitled to a general execution until its deficiency judgment is determined, and it cannot be determined until after the property is sold on special execution and the plaintiff is not entitled to a general execution until it has first complied with section 505, O. S. 1931. After the deficiency judgment is determined, if any, then it becomes a personal judgment upon which a general execution can be issued against any property of the judgment creditors"

—is susceptible of being construed to mean that a deficiency on a judgment after the application of the proceeds of the sale is, when ascertained, a new judgment, a personal judgment then and not before. A construction such as this is contrary to the true rule pointed out above.

The section 505, supra, reads:

"In special cases not hereinbefore provided for, the execution shall conform to the judgment or order of the court. When a judgment for any specified amount, and also for the sale of specific real or personal property shall have been rendered, and an amount sufficient to satisfy the amount of the debt or damages and costs be not made from the sale of property specified, an execution may issue for the balance, as in other cases."

This statute is in keeping with the section relating to judgment in foreclosure actions. That the determination that a balance remains unpaid on the judgment after the application of the proceeds—a deficiency—is in futuro and dependent upon the amount for which the property sells, does not make the determination of that fact a new judgment. That the right to issue a general execution depends upon the finding that a deficiency remains does not make it a new judgment, nor change the nature of the judgment. The lack of right to issue a general execution prior to this time arises by virtue of the mortgage contract. Since the judgment involves the sale of security, section 451, O. S. 1931 (12 Okla. Stat Ann. sec. 760), may or may not apply, according to the terms of the mortgage. If appraisement is waived, the order of sale cannot issue for six months; if appraisement is not waived, an order of sale is proper at once, if so ordered. The personal judgment is rendered at the time judgment is taken, but the right to levy upon the debtor's property generally is postponed for two reasons: (1) Specific property is pledged as security, and we have held that it must be sold before resort can be had to execution and garnishment. Zweigart v. Strahan, 73 Okla. 144. 175 P. 213. (2) Because if appraisement is waived, six months must elapse before the special execution or order of sale can issue, which in turn delays the right to have a general execution. It can thus be seen that these delays do not depend upon the absence of a personal judgment, nor does the judgment rendered in foreclosure lack the nature of a personal judgment solely because by law there may be postponement of sale and a delay in the right to issue general execution.

In the concluding portion of the last sentence of section 505, supra, it is provided that if the sale of the property fails to produce enough money to satisfy the debt, "an execution may" issue, and nothing is said of the necessity of rendering a new judgment or transforming the nature of the judgment already in effect. The execution for the sale of the property is merely an executive step on the part of the court to enforce a judgment rendered by it. and the determination of whether a deficiency remains is virtually a clerical detail. Section 456, O. S. 1931 (12 Okla. Stat. Ann. sec. 765), specifies the duties of the court in confirming a sale had on execution, and we have construed this section to mean that no issue is tendered on proceedings to confirm a sale except that of the regularity of the sale. Severson v. Bemore, 137 Okla. 50, 278 P. 327.

Several instances occur to our minds in which personal judgment may be rendered for a specified amount, on an open debt, and portions thereof collected by successive executions, or where assets seized and sold may be so owned as to require an apportionment of the proceeds. It is hardly to be thought that the uncertainty whether apparently sufficient proceeds will suffice to satisfy the judgment would necessitate the rendition of a new judgment for the balance, if one remained. It remains the same judgment in a reduced amount.

With these views in mind, we pass to an examination of the judgment of Sep'ember 1, 1930. This judgment adjudged the amount due; rendered a personal judgment against four named defendants;- established the mortgage lien 'and directed the sale of the property without appraisement; directed the application of the proceeds arising from the sale: and provided that if they were not sufficient to satisfy the judgment rendered—that is, if a deficiency remained—execution, should issue. Thus it can be seen that this judgment covered every issue and cared for any contingency that might arise in the enforcement thereof. The application of the proceeds of the sale either would suffice or fail to suffice to satisfy the judgment. If it sufficed, the judgment was satisfied in full and no legal right thereaf'er existed to issue executions thereon. If it did not suffice, then a general execution could issue at the praecipe of the judgment creditor. We hold, therefore, that the judgment of September 1, 1930, is the judgment in this action, and that the order of April 29, 1931, ascertaining the amount of the deficiency is merely the approval of the execution of the process of the court in the enforcement of its judgment.

The next issue to be discussed is, When did the judgment become dormant? Bartlett argues that the time ought not to begin running as of September 1, 1930, because it was precluded by the statute and the judgment from issuing an execution of any kind for six months and was precluded from issuing a general execution until it was determined whether a deficiency remained. It argues that the time ought not to begin to run until it was free to issue a general execution.

In our opinion this is controlled by statute, and our statute, section 442, O. S. 1931 (12 Okla. Stat. Ann. sec. 735), reads:

"If execution shall not be sued out within five years after the date of any judgment that now is or may hereafter be rendered, in any court of record in this state, or if five years shall have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor. * * *"

This section requires the issuance of an execution on any judgment, which would include foreclosure judgments, within five years after it is rendered. However, if an execution is issued within five-year period, it suffices to extend the life of the judgment, if it is not satisfied by the execution, for another five years. Such judgment becomes dormant, however, if five years elapse without an execution being issued, or if five years elapse between the date of issuing the last execution and the time of suing out (the date) of another execution.

The order of sale issued herein on March 11, 1931, is an execution within the meaning of our statute, section 439, O. S. 1931 (12 Okla. Stat Ann. sec. 732), which reads:

"Executions are of three kinds First. Against the property of the judgment debtor. Second. For the delivery of possession of real or personal property, with damages for holding the same, and costs. Third. Executions in special cases" Paschal Inv. Co. v Atwater, 174 Okla. 356, 50 P.2d 357, and other cases.

Therefore, whether the time began to run as of the date of September 1, 1930. it was interrup'ed and extended by the issuance of the special execution on March 11, 1931.

We hold by virtue of the language of the statute, section 442, supra, it is the time which elapses between the dates of the executions which determine whe'her the judgment has become dormant. In this case the special execution was issued March 11, 1931, and the judgment became dormant March 11, 1936.

Bartlett argues that the six-month period it was required to wait before issuing its special execution resulted in diminishing its five-year period. This is not so in actual result. While it does use up six months of the first five years. it results automatically in extending the life of the judgment for another five years from the date of its special execution No prejudice results to it. The same calculation results if it waited one year, or two years, or even one day short of five years.

By section 590. O. S. 1931 (12 Okla. Stat. Ann. sec. 1078), a dormant judgment

may be revived in the same manner as is prescribed for reviving actions before judgment.

Section 583, O. S. 1931 (12 Okla. Stat. Ann sec. 1071), relates to the revivor of actions, and reads:

"An order to revive an action against the representative or successor of a defendant shall not be made without the consent of such representatives or successor, unless in one year from the time it could have been first made, except as otherwise provided by law."

In construing and applying this section of our statutes, this court has many times said that not only must the application to revive be filed within one year from the time the judgment became dormant, but, likewise, the order of revival must be made within said year, unless the consent of those affected be procured to the entry of the order of revival thereafter. Section 584, O. S. 1931 (12 Okla. Stat. Ann. sec 1072), relates to the revivor of actions against a deceased plaintiff, but the time period is the same as in section 583, supra. See the following cases: Chou'eau v. Hoss (Soldani v. Hudson) 118 Okla 76, 246 P. 844; Blazier v. Honeybuss, 19 Okla. 316, 91 P. 872; and other cases, including Edward Thompson Co. v. Bristow, 116 Okla. 243, 244 P. 429 which is very similar to the case under consideration We quote therefrom:

"Where a judgment plaintiff seeks to revive a dormant judgment, over the objection of the judgment debtor, and commences proceedings for revivor within a year next after the judgment becomes dormant by filing an application for revivor and giving notice to the judgment debtor, and the day for presenting the matter, as fixed in the no'ice, is beyond the expiration of a year after the judgment became dormant, the court is entirely wanting in power to revive the judgment on the day named in the notice or at any subsequent date."

In the case before us the application for revivor was filed on the day the year expired, and the date set for the hearing was after the expiration of the year, and the date on which the matter was heard was after the expiration of the year. Since the judgment debtors were present and objected to the revivor the trial court was without power to revive the judgment, and its judgment denying the application for revivor was correct.

Judgment affirmed.

PHELPS, CORN, GIBSON, and HURST, JJ., concur.