## ASHCRAFT v. BUTTS.

No. 28874.   Oct. 24, 1939.

Ernest F. Smith, of Enid, for plaintiff in error.

Simons, McKnight, Simons, Mitchell & McKnight, of Enid, for defendant in error.

DAVISON, J.   This is an action in replevin instituted in the district court of Alfalfa county on the 9th day of July, 1937, by O. L. Butts, as plaintiff, against J. F. Ashcraft, as defendant. The plaintiff asserted a chattel mortgage lien on an automobile owned and possessed by the defendant and claimed by him to be free from plaintiff's alleged lien. The cause was tried to the court without the intervention of a jury on the 21st day of January, 1938, resulting in a judgment for the plaintiff. Motion for new trial having been overruled, the defendant prosecutes this appeal, thus reversing the order of apppearance in this court. Our future reference to the parties will be by their trial court designation.

The defendant, J. F. Ashcraft, purchased the automobile in question from one T. B. Unruh, on May 15, 1937. Unruh was the licensed Chevrolet dealer at Meno in Major county, Okla. He dealt in both new and used cars. The automobile involved in this action was a used car. It was purchased by the defendant at the place of business of Unruh at Meno when the defendant went there as a prospective customer. In the course of his negotiation, he inspected other cars being offered for sale, ultimately choosing the one now in dispute.

After the defendant had paid for the car and removed it to his residence in Alfalfa county, the plaintiff contacted him, advising him that he held a chattel mortgage thereon. The mortgage had been executed by the dealer, Unruh, on the 27th day of March, 1937. The indebtedness, in the sum of $280, secured by the mortgage had not been paid.

Ashcraft refused to recognize the mortgage as the basis of a valid lien against his property, and when this action was subsequently instituted, defended it on the theory that a chattel mortgage executed by a dealer on a part of his stock in trade is invalid as to purchasers in the usual course of business.

In the case of Roy E. Howell v. Lena R. Board et al., 185 Okla. 513, 94 P.2d 830, we said in paragraph 1 of the syllabus:

"A chattel mortgage given by a dealer in automobiles on a part of his stock in trade to a mortgagee who knows the property is being offered for sale to the public is ineffective as against a purchaser from such dealer in the usual course of business and also nonenforceable against one who subsequently acquires a chattel mortgage lien on such property created by a chattel mortgage executed by the purchaser."

Our decision in that case was based upon the grounds of waiver by implied consent to sale.

The plaintiff in this case urges in substance that the foregoing rule should not govern the disposition of this appeal by reason of peculiarities in the fact situation which operates to remove it from the operation of the rule.

It is pointed out that, according to the plaintiff's testimony, there was an express understanding between himself and the dealer that this and other cars upon which he had taken mortgages were not to be sold or conveyed to purchasers until the mortgages had been paid and released. This testimony was in direct conflict with that of the dealer, who appears as a witness for the defendant and asserted that it was understood between the plaintiff and himself that the mortgaged automobiles would be sold and the mortgage indebtedness subsequently paid.

In this connection, it appears that the dealer had for some time been partially financed in his busiess by the plaintiff, who regularly loaned him money on automobiles, both new and used, which constituted his stock in trade. A number of the mortgages conveying automobiles had not been paid at the time this case was tried. A number of replevin actions were pending in which the plaintiff here was seeking to recover from the respective purchasers of such cars. The course of dealing as conducted between the parties was that when a loan was made on new cars, the bill of lading or other descriptive information was accepted by the plaintiff for the purpose of determining the amount which would be loaned, but used automobiles such as the one herein involved were taken to Enid, where plaintiff operated his finance business, for the purpose of appraisal or valuation. The particular car here involved was taken to Enid for the purpose of procuring a loan as soon as it was procured by the dealer and before it had been physically placed among the other cars, new and used, which constituted his stock. The plaintiff as a witness in his own behalf displayed a decided reluctance to reveal the facts as known to him; however, he did, on cross-examination, after considerable evasion, testify concerning his knowledge that the mortgaged property would be sold as follows:

"A. Well, I didn't suppose, of course, that he would keep them forever. Just like I said, it was up to him on that part of it. Q. The selling was up to him, and you expected him to sell them, didn't you? You expected that, didn't you, in his business? A. Well, I expected in time he would, yes, sir, but I first expected him to pay me off."

On redirect examination under the guidance of his own attorney, he displayed more candor on the point. He then said:

"Q. Now, Mr. Smith has kept asking you if you expected him to sell these cars. You expected him to sell the cars but to come in and settle with you before he did complete his sale, didn't you? A. That is right."

It is clearly apparent from the record that the plaintiff knew when he took the mortgage on this car as well as other cars owned by the dealer that it would be displayed for sale as a part of the dealer's stock. This was the general understanding between the parties with reference to this and other automobiles on which the plaintiff was making loans (which, incidentally, were 30-day loans, and not the type of loan covering a longer period which is customarily made when the purchase of cars for private purposes is being financed). There is no evidence in the record indicating a different understanding between the parties with reference to this particular automobile or the loan thereon.

An unsuccessful effort was made by counsel for the plaintiff to create the inference that this particular car was not carried in the dealer's stock, by questioning the dealer with reference to its use for private purposes. This questioning elicited the information that the dealer did occasionally use cars carried in stock for purposes not immediately connected with their prospective sale, and that such occasional usage of stock cars occurred during the period of time this particular car was carried in stock and that it was possible that this car, among others, was on occasions employed in such incidental usage. We are unable to perceive that a dealer's temporary withdrawal

and subsequent replacement of property carried in stock would deprive it of its identity as a part of his stock after it had been replaced.

The dispute in the evidence, as we have previously indicated, concerns that part of the agreement relating to conditions upon which the dealer could consummate a sale to a customer. In this respect, since the plaintiff prevailed in the trial court, his version of the agreement must be accepted.

Thus, although the dealer was, with the knowledge and consent of the plaintiff, displaying this and other mortgaged automobiles for sale to the general public, he had a private understanding with plaintiff not to sell property covered by a mortgage until he had first settled with the plaintiff.

The question is: Did this understanding deprive the purchaser of the cloak of protection usually afforded by the law? We are of the opinion that it did not, and so hold.

To decide otherwise would strangle legitimate trade and render it necessary for every purchaser of merchandise being offered for sale in the public markets to inspect the records for his own protection. Such a course of dealing is not now and never has been contemplated by the law in this jurisdiction as a protection to a mortgagee who knew at the time he took his mortgage that the mortgaged chattels would be so used.

Since waiver, either by express or implied agreement, is the intentional relinquishment of a known right (Farris v. Commercial Union Fire Ins. Co., 176 Okla. 331, 55 P.2d 432), and since it is debatable whether the plaintiff can be said to have intentionally relinquished his lien in view of his testimony respecting the agreement between himself and the dealer, it would seem that estoppel constitutes the proper basis for the application of the rule in this case. The language of the Virginia Court in Boice v. Finance & Guaranty Corporation (Va.) 102 S. E. 591, 10 A. L. R. 654, is particularly appropriate to the transaction here involved. It was there said:

"It is true that, as a rule, the seller of personal chattels cannot confer upon a purchaser any better title than he himself has; but if the owner stands by and permits a seller, who is a licensed dealer in such goods, to hold himself out to the world as owner, to treat the goods as his own, place them with other similar goods of his own in a public showroom, and offer the same indiscriminately with his own to the public, he will be estopped by his conduct from asserting his ownership against a purchaser for value without notice of his title. The constructive notice furnished by a recorded mortgage or deed of trust in such cases is not sufficient. The act of knowingly permitting goods to be so handled and used by the seller in the ordinary and usual conduct of his business is just as destructive of the rights of the creditor as if such permission had been expressly granted in the mortgage or deed of trust."

See, also, Coffman v. Citizens' Loan & Investment Co. (Ark.) 290 S. W. 961; Kearby v. Western States Securities Co. (Ariz.) 250 P. 766; Moore v. Ellison (Colo.) 261 P. 461. Consider, also, Turk et al. v. Kramer et al., 138 Okla. 35, 280 P. 266.

The point is also made that this mortgage was taken when the dealer purchased the car and before it was physically placed on his business premises as a part of his stock. This is immaterial, since it was understood between the two parties that the mortgaged property would be so used. Incidentally, it appears that the plaintiff took a great many of the mortgages from the dealer before the automobiles were actually on the business premises of the dealer. New cars were mortgaged upon presentation of a bill of lading before they were ordinarily at the dealer's place of business.

We therefore conclude that the rule announced in Howell v. Board, as quoted, supra, governs this case, but that its application herein is justified upon consideration of the doctrine of estoppel.

Passing mention should be accorded the pleading on this point. In Jones v. S. H. Kress & Co., 54 Okla. 194, 153 P. 655, we said in paragraph 3 of the syllabus:

"A party entitled to an estoppel need not in all cases formally plead the estoppel. If the facts constituting the estoppel are in any way sufficiently pleaded, he is entitled to the benefit of the law arising therefrom."

See, also, Hunt v. Tulsa Terrazzo & Mosaic Co. et al., 157 Okla. 174, 11 P.2d 521; Williams v. Edwards et al., 163 Okla. 246, 22 P.2d 1026.

The facts constituting the estoppel were sufficiently and clearly, though not formally, pleaded by the defendant in this case.

The decision of the trial court is reversed.

WELCH, V. C. J., and RILEY, GIBSON, and HURST, JJ., concur.