**RECONSTRUCTION FINANCE CORP.**

v.

**BREEDING et al.**

**No. 4631.**

United States Court of Appeals
Tenth Circuit.

March 16, 1954.

Pickett, Circuit Judge, dissented.

Lynn Adams, Oklahoma City, Okl., for appellant.

J. B. Dudley, Jr., Washington, D. C. (R. M. Mountcastle, Muskogee, Okl., and J. B. Dudley, Oklahoma City, Okl., were with him on the brief), for appellees.

Before BRATTON, HUXMAN and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

This appeal is from an order denying a motion to revive the original judgment and the supplemental judgment entered in this cause. For convenience, reference will be made to the Reconstruction Finance Corporation as the Finance Corporation; to Glenn E. Breeding and Irene Breeding as the Breedings; and to Tri-State Motor Transport, Inc., Opal Bowlin Lyman, and the administrator of the estate of Lucille Lyman Porter, deceased, as the third parties.

The Finance Corporation instituted the action against the Breedings to recover upon a promissory note and to foreclose certain real estate and chattel mortgages. The third parties came into the case and they too sought judgment against the Breedings upon certain promissory notes and for the foreclosure of certain mortgage liens. On April 15, 1946, judgment was entered in the action which provided that the Finance Corporation and the third parties should recover of and from the Breedings certain amounts, respectively. The judgment further provided that the mortgages securing such sums be foreclosed, the property sold, and the proceeds from the sale or sales applied upon the judgment in the manner therein specified. It further provided that if, after making all of such payments, there should be any surplus, it should be paid according to the further order of the court; that in case there should be any deficiency in the amount required to pay in full the several amounts therein directed to be paid, the special master should report to the court the amount of such deficiency; and that the Finance Corporation and the third parties should have judgment against the Breedings for the respective amounts due, and should have execution therefor. And it further provided that the court reserved jurisdiction of the cause for future action in all matters not then presently determined. On September 20, 1946, a supplemental judgment for a separate or additional amount was entered in favor of the Finance Corporation and against the Breedings. The property was sold and the Finance Corporation was the purchaser. The special master reported the sale. Under date of September 9, 1947, the sale was confirmed; on appeal that action was affirmed, 10 Cir., 172 F.2d 416; and certiorari was denied, 338 U.S. 814, 70 S.Ct. 54, 94 L.Ed. 493. After the sale of the mortgaged property in the manner indicated, the Finance Corporation made private sales of all of such property and applied the proceeds on the indebtedness, but the amount received was less than the amount of the judgment indebtedness. The Finance Corporation acquired the judgments in favor of the third parties. No motion was made for the entry of a deficiency judgment and no deficiency judgment was entered by the court or noted on the clerk's judgment docket.

In October, 1952, the Finance Corporation filed in the action a motion to revive the original judgment and the supplemental judgment. After allowing all proper credits, there was then due the Finance Corporation a substantial sum on the judgment indebtedness and the revivor was sought for such sum. The court concluded among other things that the original judgment and the supplemental judgment were not sufficient to constitute a deficiency judgment; that the Finance Corporation had no deficiency judgment; that the original judgment and the supplemental judgment were of no further force and effect; that execu-

tions issued upon such judgments in January, 1952, were invalid; and that the motion to revive should be denied. An order was entered denying the motion, and the Finance Corporation appealed.

■ Error is assigned upon the conclusion of the trial court that the original judgment and the supplemental judgment were not sufficient to amount to a decree of a deficiency judgment. The substance of the argument in support of the contention is that the report of the special master disclosed the sale of the mortgaged property for a stated sum; that such sum was less than the aggregate amount of the judgments; and that the Finance Corporation automatically had a deficiency judgment for the difference between the two. A judgment determining that plaintiff have and recover from the defendant a certain sum, establishing a mortgage lien, an attachment lien, or other lien or charge upon certain property, and providing that the sum due plaintiff be realized solely and exclusively out of the proceeds of the sale of such property is ordinarily entered in an action where only constructive service of process is had upon the defendant. A judgment of that kind is one in rem. It is not a personal judgment for any amount and it does not constitute any basis for the entry of a deficiency personal judgment after the sale of the property and the application of the proceeds of the sale as a credit upon the original judgment. These judgments were not of that mold. They provided in clear language that the Finance Corporation and the third parties should have and recover of and from the Breedings certain amounts, respectively; and they did not provide that such sums should be realized solely and exclusively from the sale of the mortgaged property. They contemplated the possibility of an unpaid balance after application of the proceeds of the sale, and directed the special master to make report thereof. Under the law of Oklahoma, as we understand the law of that state, the original judgment and the supplemental judgment were personal judgments for the full amounts specified therein; the provisions therein establishing the liens, directing the sale of the mortgaged property, and directing application of the proceeds arising from the sale or sales of the property upon the judgments were provisions to effectuate payment of such judgments; and after such application of the proceeds, the judgments were personal judgments for the balance remaining unpaid. Bartlett Mortgage Co. v. Morrison, 183 Okl. 214, 81 P.2d 318; Fenimore v. State ex rel. Com'rs of Land Office, 200 Okl. 400, 194 P.2d 852.

■ Even though the judgments were personal judgments for the balance remaining unpaid after application of the proceeds of the sale as part payment, was the motion to revive well founded and did the court err in denying it? Title 12, § 686, Oklahoma Statutes 1951, concerns itself with judgments in actions for the enforcement of mortgage, deed of trust, or other liens or charges upon property. It provides that in such an action a personal judgment shall be rendered for the amount or amounts due the plaintiff or other parties to the action having liens upon the property. It further provides that the judgment shall make provision for the sale of the property subject to the lien or charge, for the application of the proceeds of the sale unless such application be reserved for future order of the court, and for the taxing of costs. It provides that in the order confirming the sale, the court may order the issuance of a writ of assistance and that any resistance to the service of such writ shall constitute indirect contempt of court. It then provides that notwithstanding the preceding provisions in the section, no judgment shall be enforced for any residue of the debt remaining unsatisfied after the mortgaged property shall have been sold, except as therein provided. It then provides that simultaneously with the making of a motion for an order confirming the sale, or in any event within ninety days after the date of the sale, the party to whom such residue shall be owing may make a motion in the action for leave to enter a

deficiency judgment upon notice to the party against whom such judgment is sought or notice upon the attorney who shall have appeared for such party in such action. And it then provides that upon such motion, the court shall determine the fair and reasonable market value of the mortgaged premises as of the date of sale, or such nearest earlier date as there shall have been any market value thereof, and shall make an order directing the entry of a deficiency judgment; that such deficiency judgment shall be for an amount equal to the sum of the amount owing by the party liable as determined by the judgment, with certain specified additions and deductions, less the market value as determined by the court or the sale price of the property, whichever shall be the higher; that if no motion for a deficiency judgment shall be made as therein prescribed, the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist; and that nothing contained in the section shall limit or reduce any deficiency judgment in favor of or in behalf of the State, for debts, obligations, or taxes due the State. The Finance Corporation argues that the statute is limited to actions for the foreclosure of mortgages, deeds of trust, or other liens upon land. The statute does refer specifically to mortgages embracing separate tracts of land situated in two or more counties. It does speak specifically of an order of the court confirming the sale of land. It does refer specifically to the issuance of a writ of assistance to place the purchaser at the sale in possession of land sold. It does refer at various places to the mortgaged property. And it does refer more than once to the mortgaged premises. But it is a sweeping statute designed to have application to actions in equity for the foreclosure of mortgage liens, deed of trust liens, or other like liens. It speaks in general terms of foreclosure upon property. And in its generally accepted understanding, the word property includes personalty as well as realty. In the absence of a clear indication that the legislature intended the statute to have application only in actions for the foreclosure of liens upon real estate to the exclusion of actions for the foreclosure of liens upon personal property, it should not be thus narrowed by judicial construction. We think the statute must be construed to bring within its compass an action of the kind presently under consideration for the foreclosure of mortgage liens upon both real estate and personal property. Cf. Stahl v. Wade, 11 Okl. 483, 69 P. 301.

[4–6] It is further contended that section 686, supra, does not apply in a case brought by the Finance Corporation in a federal court to foreclose a mortgage. The rule is too firmly established to permit of question that where the United States acts within the permitted scope of its governmental authority, the question of the creation or negation of an express or implied liability of an individual or a municipal subdivision of a state to the United States is to be determined by federal law. And unless Congress has provided otherwise, the right of the United States to enforce in a federal court such a liability may not be defeated or limited by state law. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838; United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209; United States v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067; United States v. Independent School District No. 1 of Okmulgee County, Oklahoma, 10 Cir., 209 F.2d 578. But this is not an action instituted by the United States as a sovereign for the enforcement of an express or implied liability due it. This action was instituted by the Finance Corporation. The Finance Corporation is a corporation created by Act of Congress. All of its stock is owned by the United States. It is a wholly owned governmental agency with wide powers, and since its creation it has conducted financial operations on a wide scale. By express Congressional mandate, it has pow-

er to sue and be sued in any court of competent jurisdiction. But when acting as a litigant in a court of competent jurisdiction, it is not clothed with the prerogatives or immunity of the sovereign. Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784; Reconstruction Finance Corp. v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595.

■ Under the law of Oklahoma, entry of the so-called deficiency judgment in accordance with section 686 is the method of ascertaining and fixing judicially the amount of the deficiency on the original judgment. It is merely the approval of the execution of the process of the court in the enforcement of its original judgment. Until confirmation of the sale and entry of the deficiency judgment in the manner specified in the statute, the amount of the deficiency on the original judgment is undetermined. Until entry of the deficiency in the manner fixed in the statute, the amount remaining due on the original judgment to be satisfied through the issuance of a general execution and a levy and sale pursuant thereto is not judicially ascertained and no general execution can issue. Entry of the deficiency is a post-judgment prerequisite to the issuance of a general execution for the enforcement of the unpaid balance due upon the original judgment. Aycock v. Harriman, 185 Okl. 590, 95 P.2d 110. That being the construction placed upon the statute by the highest court of the state, it is binding upon this court. Morehead v. People of State of New York ex rel. Tipaldo, 298 U.S. 587, 56 S.Ct. 918, 80 L.Ed. 1347; State of Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 60 S.Ct. 523, 84 L. Ed. 744; Aero Mayflower Transit Co. v. Board of Railroad Commissioners, 332 U.S. 495, 68 S.Ct. 167, 92 L.Ed. 99. And Rule of Civil Procedure 69, 28 U.S.C., provides that the procedure on execution, in proceedings supplementary to and in aid of the judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure in the state in which the district court is held, except to the extent that a statute of the United States is applicable. Entry of the deficiency in the manner specified in section 686 being a post-judgment prerequisite to the issuance of a general execution for the enforcement of the balance due on the original judgment, Rule 69, 28 U.S.C.A., operates to make the statute applicable here.

■■ The remaining contention urged for reversal of the order denying the motion to revive is that inasmuch as section 686 is not applicable to debts and obligations due the State of Oklahoma it is without application to debts and obligations due the United States. By way of amplification of the contention it is urged that one would not expect Congress to adopt a statute and make it applicable to actions founded upon debts due the United States when the statute was not applicable to debts and obligations due the State. But this is not an action instituted by the United States to recover judgment upon a debt or obligation due to the United States. It is an action brought by the Finance Corporation to enforce an obligation due such Corporation. And reference has already been made herein to the well established rule that when the Finance Corporation institutes or becomes a party to an action in a court of competent jurisdiction, it occupies the same position as do other private parties in respect to the ordinary impingements of the litigation. Reconstruction Finance Corp. v. J. G. Menihan Corp., supra. Moreover, the statute does not expressly exclude from its provisions debts and obligations due to the United States. There is nothing in the statute which indicates by clear inference or implication a legislative intent to exclude therefrom debts and obligations due the United States. And it is not the function of this court to enlarge the exclusionary provision by bringing within it a sovereign—the United States—not mentioned directly or indirectly.

■ Inasmuch as section 686 has aplication, inasmuch as no deficiency judgment was obtained in the manner specified in the statute, inasmuch as under the

statute the proceeds of the sale of the mortgaged property, regardless of the amount, are deemed to be in full satisfaction of the mortgage debt, and inasmuch as under the statute no right exists to recover any deficiency in any action or proceeding, the motion to revive was not well founded and its denial did not constitute error.

Affirmed.

PICKETT, Circuit Judge (dissenting).

The principal controversy in this case revolves around the question as to whether the state law of Oklahoma or the federal law is applicable. The parties in their briefs and in their oral arguments conceded that the federal law should prevail unless the state law was made applicable by federal statute or the Federal Rules of Civil Procedure. The action was brought by the RFC to enforce an obligation created under federal statute. It is not a diversity action. Its purpose is the enforcement of an obligation which is exclusively federal, and in the absence of a statute, it is controlled by the federal law. Board of Commissioners of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313; Deitrick v. Greaney, 309 U.S. 190, 60 S. Ct. 480, 84 L.Ed. 694; D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956; Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838; United States v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067; United States v. Independent School District No. 1, 10 Cir., 209 F.2d 578, 580; 59 Harv.L.Rev. 966. In the case of United States v. Independent School District No. 1, the United States brought an action to recover funds which had been disbursed to a school district under the terms of an agreement between the War Food Administration and the school district. The amounts paid the school district were in excess of those authorized. It was contended that under the Oklahoma Constitution and Statutes, the United States was not entitled to recover. In comment-ing on the law applicable to the case we said:

"In the Clearfield case the government sued to recover on a forged government check, and the question was whether its right to recover was controlled by state law where the check was issued and paid or by federal law. The court left no doubt of the controlling effect of federal law, holding that when the federal government disburses its funds or pays its debts, it does so in the exercise of a constitutional power or function, and that the rights and duties incident to the exercise of that power have their roots in the federal law, and federal law controls. In the absence of applicable federal statutes, the federal courts fashion the remedies for the rights from the body of 'federal common law'. And in the fashioning of those remedies, state law is applicable only insofar as it is deemed appropriate as a basis for the federal remedies."

In United States v. Standard Oil Company, supra [332 U.S. 301, 67 S.Ct. 1608], in discussing this question, the Supreme Court said:

"The great object of the Erie case (Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188) was to secure in the federal courts, in diversity cases, the application of the same substantive law as would control if the suit were brought in the courts of the state where the federal court sits. It was the so-called 'federal common law' utilized as a substitute for state power, to create and enforce legal relationships in the area set apart in our scheme for state rather than for federal control, that the Erie decision threw out. Its object and effect were thus to bring federal judicial power under subjection to state authority in matters essentially of local interest and state control.

"Conversely there was no purpose or effect for broadening state power over matters essentially of federal

.character or for determining whether issues are of that nature. The diversity jurisdiction had not created special problems of that sort. Accordingly the Erie decision, which related only to the law to be applied in exercise of that jurisdiction, had no effect, and was intended to have none, to bring within the governance of state law matters exclusively federal, because made so by constitutional or valid congressional command, or others so vitally affecting interests, powers and relations of the Federal Government as to require uniform national disposition rather than diversified state rulings. Cf. Clearfield Trust Co. v. United States, 318 U.S. [363] at pages 366–368, 63 S.Ct. [573,] at pages 574–576, 87 L.Ed. 838. Hence, although federal judicial power to deal with common-law problems was cut down in the realm of liability or its absence governable by state law, that power remained unimpaired for dealing independently, wherever necessary or appropriate, with essentially federal matters, even though Congress has not acted affirmatively about the specific question."

The RFC is a corporation created by federal statute to represent the United States in making loans of federal funds. By the provisions of the statute, sovereign immunity has been waived, and the corporation may sue and be sued in either state or federal courts, but the statute does not make the state law applicable. In the absence of such a statute the right to recover these funds should not depend upon the law of the state where the suit is brought.

Of course, if Rule 69 has the effect of bringing the Oklahoma statute into effect as against the RFC, then the judgment should be affirmed. The Oklahoma statute is procedural to the extent that a valid deficiency judgment cannot be obtained without complying with its terms and no general execution can issue until the entry of the deficiency is fixed in the manner required by the statute. The requirements of the Oklahoma statute are, I think, substantive and do not constitute procedure on execution or in aid of execution as contemplated by Rule 69, which was designed only to make state law applicable in the enforcement of a valid judgment and not in the creation of it.

For the reasons stated, I would reverse the judgment.