**Truly M. BELGARD**

**v.**

**UNITED STATES of America.**

**Civ. A. No. 9607.**

United States District Court
W. D. Louisiana,
Alexandria Division.

July 8, 1964.

Gist, Murchison & Gist, Alexandria, La., for plaintiff.

Edward L. Shaheen, U. S. Atty., Shreveport, La., and Jerome J. Reso, Jr., Tax Division, Dept. of Justice, Ft. Worth, Tex., for the Government.

HUNTER, District Judge.

The taxpayer, Belgard, seeks recovery of $3,795.87 paid as federal income taxes for 1958, 1959 and 1960. The counterclaim by the United States against Belgard seeks payment of the balance allegedly due to the Small Business Administration.

The essential facts are not in serious dispute.

Prior to December 1961 the taxpayer was the proprietor of Bayou Millwork Company, Alexandria, Louisiana. In connection with this business, he borrowed $35,000 from the Small Business Administration for which he gave his note secured by a chattel mortgage.

During 1960, the taxpayer neglected to pay Federal Unemployment Tax Act taxes, and in the same year as well as in the next year—1961—the taxpayer withheld income taxes from employees' wages but did not pay these amounts over to the United States. After efforts to collect these taxes failed, the Internal Revenue Service, on October 27, 1961, gave notice to the taxpayer that various assets belonging to him had been seized for non-payment. (Stip. par. 6.) At that time, the following taxes had already been assessed and an additional assessment of $1,824.82 was made on November 9, 1961, for taxes that the taxpayer had withheld from employees' wages during the third quarter of 1961 (Stip. par. 5):

| Date of Assessment | Kind of Tax | Period Involved | Amount |
|---|---|---|---|
| 1–6–61 | Employee's Withholding | 3rd Quarter, 1960 | $1,777.83 |
| 9–22–61 | Employee's Withholding | 1st Quarter, 1961 | 2,144.76 |
| 9–11–61 | Employee's Withholding | 2nd Quarter, 1961 | 3,045.17 |
| 4–14–61 | F.U.T.A. | 1960 | 181.45 |
| 5–26–61 | Income | 1960 | 1,042.49 |

On November 8, 1961, the taxpayer was notified that the seized property would be offered for sale at public auction to effect payment of the tax. A sale by public auction, pursuant to Section 6335 of the Internal Revenue Code of 1954 and Treasury Regulations promulgated thereunder, was held on December 18, 1961. The procedures and announcements required by the Treasury Regulations (1954 Code, Section 301.-6335–1(c) (4) (iii), were properly made. Because most of the property was mortgaged to the Small Business Administration, a representative of that agency made an announcement to this effect and reported that the unpaid balance of the taxpayer's obligation was $31,110.40 at that time. Prior to the sale, the revenue officer, in accordance with the directives of the Commissioner of Internal Revenue, correctly determined the minimum bid price for the property to be $10,335.11, but did not announce this fact, which is his prerogative (Stip. pars. 8–9; Tr. 71–76.).

No bids were received from the public, and the property was declared to have been purchased for the United States and was so purchased at the minimum bid price of $10,335.11, which was an amount equal to the unpaid taxes, accrued interest, and expenses of sale. (Stip. pars. 9, 11; Tr. 76, Ex. H.) Thereafter, the property was offered for sale by the Internal Revenue Service on a sealed bid basis, but no bids were received. (Stip. par. 12.)

On June 19, 1962, the taxpayer filed an application for a tentative carryback adjustment with the Commissioner of Internal Revenue wherein he sought to

carry back a reported $124,305.67 net operating loss for the year 1961, in order to obtain a refund of the taxes which had been paid in 1958, 1959 and 1960. On August 28, 1962, the taxpayer was informed that the Service was going to allow the loss carryback, but that the amount would be offset against a debt due another Government agency, viz., the Small Business Administration. The crux of this conversation was confirmed in writing. (Tr. 54–55; Ex. P–5). On September 13, 1962, the District Director of Internal Revenue scheduled the amount claimed in a tentative carryback application for payment. Although the claim had been allowed, no check was drawn in favor of the taxpayer. Instead, a voucher was prepared scheduling payment of the $3,795.87 to the Small Business Administration. (Tr. 85–86; Ex. D–x.) Thereafter, the necessary bookkeeping operations took place; the Small Business Administration credited the taxpayer's account in a sum equal to the amount received; and notifications were mailed to the taxpayer by the General Accounting Office and the Small Business Administration advising him of the action that had been taken. On September 20, 1962, the property was against offered for sale by the Internal Revenue Service. This time, the Internal Revenue Service secured an agreement from the Small Business Administration that the latter would release its mortgage so that the property could be offered free and clear. The Internal Revenue Service agreed to turn over the proceeds of sale, less expenses, to the Small Business Administration up to the amount due them by the taxpayer. The District Director of Internal Revenue then contracted with an auctioneer to conduct the sale. The sale was conducted in accordance with the provisions of Section 7505 of the Internal Revenue Code of 1954 and the Treasury Regulations issued thereunder. The high bidder was Mr. N. L. McCann, the taxpayer's uncle, who purchased the property for $32,000.

After the sale was effected, the Small Business Administration delivered its release of chattel mortgage to the purchaser. (Stip. par. 16; Ex. N.) In making payment to the Small Business Administration, the Internal Revenue Service deducted the expenses of sale, as well as that portion of the purchase price computed to be attributable to items not covered by the Small Business Administration mortgage. The remainder of $27,201.48 was paid to the Small Business Administration by the Internal Revenue Service and was credited to the amount remaining unpaid on the taxpayer's obligation to that agency. (Tr. 80–82; Stip. par. 17; Ex. G.)

After properly crediting all payments received, including the offset of $3,795.87 representing the effect of the allowance of the tentative carryback, and $27,201.-48 representing the proceeds of sale, the records of the Small Business Administration disclose that there is still due and owing by the taxpayer the amount of $2,173.36, plus interest. (Ex. G.) The taxpayer contends that he does not owe this amount to the Small Business Administration; that his obligation to the Small Business Administration was canceled due to the action taken by the Commissioner of Internal Revenue to collect unpaid taxes; and that he is entitled to a refund of taxes paid for the years 1958, 1959, and 1960, in the amount of $3,795.87. The Government contends that no refund is due to the taxpayer and that he is still indebted to the Small Business Administration in the amount of $2,173.36, plus interest.

## BELGARD'S MOTION TO DISMISS THE COUNTERCLAIM FILED BY THE UNITED STATES

■ The jurisdiction of this Court over the counterclaim is conferred by 28 U.S.C.A. § 1346(c). Cherry Cotton Mills v. United States, 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835. There can be no question but that the United States does have a cause of action for the unpaid balance of the debt due to

the Small Business Administration in the amount of $2,173.36. We thus reach the merits of this controversy.

## ON THE MERITS

■ Belgard's first argument is that the provisions of Title 26 U.S.C.A. § 6411, concerning tentative carryback adjustments, permit a setoff only against taxes due and not as against any other obligation owed to the United States. Thus, the initial inquiry is whether or not the Government can offset an amount due to a claimant via carryback adjustment against an amount due from that claimant to the Small Business Administration. In our judgment, the Government has the right—which belongs to every creditor—to apply the unappropriated monies of its debtor, in its hands, in extinguishment of amounts due to that debtor. The General Accounting Office has the obligation to settle the various claims by offset. United States v. Munsey Trust Company, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 20, 22; United States v. American Surety Company of New York, 158 F.2d 12, 5 C.A.1946. The statutory authority could not be any clearer.[1]

■ The Court appreciates Belgard's argument pegged on Section 6411(b) of the Internal Revenue Code of 1954, which provides that any refund due as a result of the allowance of a tentative carryback application shall "be either credited against any tax or installment thereof then due from the taxpayer, or refunded to the taxpayer." But we do not agree that the language bars offsetting such an amount against any debt other than a tax debt. Section 6402 contains substantially the same language as 6411(b), and if Belgard's reasoning is correct, then the duty of the Comptroller General to offset debts due by the United States against debts due to the United States would be completely emasculated in all instances where the amount due is a tax refund. This contention was specifically rejected by the Supreme Court of the United States in Cherry Cotton Mills v. United States, 327 U. S. 536, 66 S.Ct. 729, 90 L.Ed. 835, and the right of the Government to offset tax refunds against balances due on loans from Government agencies fully recognized. If we were to adopt the narrow construction urged upon us by the taxpayer, we would simply give Belgard a judgment against the United States, and then grant the United States a judgment against Belgard. We see no reason why we should not, in the rational and economical administration of justice, dispose of these claims as one and at the same time. When and if plaintiff pays the United States any judgment which we might give the United States on its counterclaim, the plaintiff will of course have a complete defense against any claim by the Small Business Administration and will not be concerned about how the Internal Revenue Department and the Small Business Administration record the transaction on their books. The question remaining is whether or not the taxpayer was indebted to the Small Business Administration when the offset was made.

The taxpayer insists that his indebtedness to the Small Business Administration was canceled by the seizure and sale of December 18, 1961. His argument is that the United States is a single legal entity, and that the entire obligation itself was extinguished when the Internal Revenue Service became the owner of the property.

■ Accepting arguendo taxpayer's premise that the United States purchased the property subject to the mortgage, this would not cancel the taxpayer's debt to the Small Business Administra-

1. Revised Statutes:
    Sec. 236 [as amended by Sec. 305, Budget and Accounting Act, 1921, c. 18, 42 Stat. 20].
    "All claims and demands whatever by the Government of the United States or against it, and all accounts whatever in which the Government of the United States is concerned, either as debtor or creditor, shall be settled and adjusted in the General Accounting Office." (31 U.S.C. 1958 ed., § 71.)

tion. When property is sold at a tax sale under the provisions of Section 6335 of the Internal Revenue Code, what is canceled and all that is canceled is the outstanding tax liability, and then only if the price is sufficient. What is offered for sale under Section 6335 is the taxpayer's interest in the property —that is, any equity he has over and above outstanding mortgages and liens under the provisions of Section 6335. There was no attempt by Internal Revenue to collect any sum that may have been due to the Small Business Administration. When no bids were received, the property was declared to have been purchased for the United States. The purchase price was the minimum bid price (Stip. Par. 11, Ex. H.) The effect of this occurrence was to satisfy the tax liability, and only the tax liability. (The minimum bid price was an amount equal to the tax, the accrued interest thereon and the expenses of the sale). Here, it should be noted that at this sale it was announced publicly by a representative of the Small Business Administration that most of the property being offered for sale was mortgaged to it as security for a loan which had an unpaid balance at that time of $31,-110.40, and that any purchaser would purchase such equipment and assets subject to that mortgage.

As to what the minimum price was, see Mr. Webb's testimony as it appears in the transcript at Page 76. It was $10,335.11, an amount equal to the taxes, accrued interest and expenses of the sale.

We conclude that the taxpayer's indebtedness to the Small Business Administration was not canceled by virtue of the action taken by the Commissioner of Internal Revenue of December 18, 1961.

■ Belgard next argues "that the sale of December 18, 1961 fully discharged Truly Belgard, the plaintiff herein, under the Deficiency Judgment Act of the State of Louisiana." The Loui-siana Deficiency Judgment Act appears in LSA–R.S. 13:4106–4107. Admittedly, the first query is whether state or federal law applies. We are not concerned here with the priority of tax claims due the United States, nor with the rights of competing creditors under state law as in the Brosnan and Aquilino cases cited by the taxpayer.[2] We are concerned with the rights of the United States, as a creditor of the taxpayer, to enforce its claim pursuant to a specific federal statute (26 U.S.C.A. § 6335 and 26 U.S.C.A. § 7505). In such instances federal, and not state, law controls. McKnight v. United States, 259 F.2d 540 (C.A.9th); United States v. View Crest Garden Apts., Inc., 268 F.2d 380 (C.A. 9th); Reconstruction Finance Corp. v. Breeding, 211 F.2d 385 (C.A.10th); United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209; United States v. Helz, 314 F.2d 301 (C.A.6th).

The Internal Revenue Service proceeded under the provisions outlined by Congress for the collection of taxes by levying against, seizing and selling assets in which taxpayer held on equity. None of these activities can bring the Louisiana Deficiency Judgment provisions into play. We simply have a sale for the collection of taxes, and the sale was made expressly, "subject to" the Small Business Administration mortgage.

### CONCLUSION

The taxpayer was indebted to the Small Business Administration when the carry-back allowance was offset against that debt. After applying the amount allowed on the carryback, as well as the amount due the Small Business Administration from the proceeds of the sale held by the Internal Revenue Service on September 20, 1962, there still remains an unpaid balance owed by the taxpayer to the Small Business Administration in the amount of $2,173.36 as of the close of business on March 4,

2. United States v. Brosnan, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192; Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365.

1964. Accordingly, the taxpayer's complaint should be dismissed and judgment should be entered in favor of the United States on its counterclaim in the amount of $2,173.36, plus interest as allowed by law.

Counsel for the United States will submit appropriate order.